425 A.2d 818

**COMMONWEALTH of Pennsylvania**

v.

**Mark CAMPOLEI, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1980.

Filed Feb. 13, 1981.

Arthur J. King, Assistant Public Defender, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence imposed after revocation of probation. The issue is whether in imposing the sentence, the lower court abused its discretion. We have concluded that it did not.

On November 12, 1975, appellant pleaded guilty to three counts of burglary,[1] eleven counts of criminal conspiracy to

1. 18 Pa.C.S.A. § 3502.

commit burglary,[2] and one count of theft by extortion.[3] He was sentenced to serve three concurrent ten-year terms of probation for the conspiracy and extortion counts. The probation started on November 12, 1975.

On July 11, 1977, appellant received a written notice that he was in violation of his probation because of his arrest on June 22, 1977, by the Hatfield Township Police for criminal attempt (burglary), loitering and prowling at nighttime, public drunkenness, and disorderly conduct.[4] At a hearing on July 29, 1977, the lower court found appellant to be in violation of his probation. Apparently, however, the court did not revoke probation.

On September 13, 1978, appellant was arrested by the Soudertown Police Department—for an offense allegedly committed on August 15, 1978—on charges of burglary, theft, receiving stolen property, criminal trespass, and criminal conspiracy. Shortly thereafter, without any notice to his probation officer, he left the Commonwealth for California. His whereabouts did not become known to the probation authorities until October 1979, when he was arrested in San Bernardino, California, for drunken driving.

Appellant was returned to the Commonwealth, and on November 13, 1979, he received a written notice that he was in violation of his probation because of his September 13, 1978, arrest by the Soudertown Police Department, and also for absconding from the supervision of the probation authorities. On December 5, 1979, the lower court held a hearing, at which it found appellant to be in violation of his probation. On December 6, 1979, the court revoked probation and sentenced appellant to a prison term of three-and-one-half to ten years on the conspiracy and burglary convictions, and to a consecutive term of one to five years on the extortion

2. 18 Pa.C.S.A. § 903.

3. 18 Pa.C.S.A. § 3923.

4. A preliminary hearing on these charges was held on July 8, 1977. On November 4, 1977, appellant pleaded guilty before the Hon. Vincent A. Cirillo to loitering and prowling at night time and was sentenced to a one-year term of probation, starting on June 8, 1978.

conviction. Appellant filed a timely petition for reconsideration of the sentence, and on December 26, 1979, after a hearing held December 24, 1979, the lower court modified the sentence to provide that the two sentences should be served concurrently.

It is from this sentence that appellant now appeals. He does not challenge the lower court's finding that he was in violation of the terms and conditions of his probation, nor its revocation of his probation. His sole contention is that in the circumstances, the sentence imposed by the lower court was too harsh.

At the revocation hearing, on December 5, the lower court heard testimony concerning the burglary for which appellant was arrested by the Soudertown police. James Raymond Engle, the tenant of the burglarized apartment, and Sergeant Charles A. Quinn, the arresting officer, testified. N.T. at 14–16. In addition, Detective Charles P. McCarthy of the Lansdale Police testified that on October 14, 1978, appellant admitted to committing the burglary. N.T. at 22–24. The court also heard testimony by appellant's probation officer, Peter Harubin, about how appellant had absconded from the supervision of the Adult Probation and Parole Department and was eventually located in California. On cross-examination by appellant's counsel, Mr. Harubin testified that he had spoken by telephone to appellant's California employer, who stated that appellant had been steadily employed since November 1978, and that he had found appellant to be a very capable and competent employee.[5] N.T. at 4–12.

After finding that appellant was in violation of his probation, N.T. at 27, the lower court heard testimony concerning sentencing.

5. Appellant's counsel also offered, and the court admitted, a letter from the secretary-treasurer of the employer stating that "[appellant] has been employed by our firm since Nov. 1978. His work record has been very good. He was very reliable at being to work on time. We are confident in saying he is an asset to our firm."

Mr. Harubin testified that on the basis of his conversations with appellant, appellant's wife,[6] and appellant's employer in California, he believed that appellant was making an attempt to lead a normal life; that the drunk driving incident was the only occasion (of which he was aware) on which appellant got into trouble in California; and that appellant was working steadily, supporting his wife and child, and paying his bills. Mr. Harubin said he had no reason to disbelieve appellant concerning his life as a "normal citizen" in California. N.T. at 27–29. He also spoke about the changes in appellant's attitudes over the last five years, particularly since he had been returned from California:

Q: Have you noticed any change in those five years?

A: It seems since the last conversations that I would have had with Mark, going back to August or September of '78, it now seems that Mark is somewhat changed in his attitude in that he's starting to accept normal values and wanting normal things in life, or at least what people would consider normal.

Q: Now, you've known him, as you said before, for five years. Do you think he's sincerely changed, in your opinion?

A: It seems that way, yes.

Q: And the difference is marked, it would be fair to say, from his earlier performance?

A: Well, from my experience with Mark, Mark was sort of arrogant and knew everything, and he really didn't have much need for what we were doing. N.T. at 30–31.

Appellant testified about his life in California. He said that he had gone to California with nothing but "a duffel bag and some clothes in it;" that he had worked not only for

6. It appears that appellant and Donna Campolei were not legally married. At the hearing on appellant's petition for reconsideration at his sentence, however, Ms. Campolei testified that their apartment lease and bank account in California were in the names of "Mr. and Mrs. Campolei" and that she was known as appellant's wife. N.T. at 14–15.

his employer, but on weekends had done extra work with a fellow-employee; that he was the sole support of his wife and child; and that the only trouble he encountered in California was the one drunk driving arrest. N.T. at 32–36. He stated that although he had previously used heroin and speed, he had been drug-free during the entire year he was in California. N.T. at 36–37. When asked why he had stopped using drugs in California, he replied:

A: I went out there—before I left, when I was thinking about leaving, and my wife—she was my girlfriend at that time—had wanted to come with me—I don't know it's just that I decided I didn't want this anymore, and I promised her and myself that if we went out there and started to do it that it wasn't going to be like it was here. N.T. at 37.

On cross-examination, appellant admitted that he had absconded after his arrest in Soudertown, saying he was scared of jail, and that he had used drugs while he was on probation. N.T. at 38–42.

On the basis of this testimony, the lower court, as noted above, sentenced appellant to a prison term of three-and-one-half to ten years on the conspiracy and burglary convictions and to a consecutive term of one to five years on the extortion conviction. In his petition for reconsideration of the sentence, appellant assigned the following reasons in support of his claim that the sentence should be changed: (1) he was 24 years of age; (2) he had not been arrested during the year in which he absconded to California, except for a traffic offense; (3) he had been employed that entire year, working as many as six to seven days a week; (4) a child was born to him in California; (5) he had supported his wife and child and attempted to provide a stable and normal home life; (6) he had voluntarily stopped using drugs (which he regarded as the cause of many of his problems); and (7) a lesser sentence would serve as a better rehabilitative vehicle. For these reasons, appellant asked the court to impose a sentence under which he could participate in a "work release" program so that he could support his family.

At the hearing on appellant's petition for reconsideration, the lower court heard testimony by appellant's wife and father and by appellant himself. Donna Campolei testified about her life with appellant in California—how appellant worked hard and supported her and their child, how they acquired an apartment and then furniture, and how appellant did not drink a lot or use any drugs. She also spoke about how hard it would be on her and the baby if appellant served a long jail term. N.T. at 3–8. Appellant's father, Raymond Campolei, testified about appellant's background—about how appellant's behavior worsened in the ninth grade, when he began using drugs, and about the positive changes he had observed in appellant since his return from California. N.T. at 15–22. Finally, appellant testified about his history of drug use, his concerns for his family while he was at Graterford Prison, and his hopes that he could be given a sentence on which he would be eligible for work-release or some other work program. N.T. at 23–26.

On the basis of this testimony, the lower court, as noted above, modified appellant's sentence to provide that the two prison terms should be served concurrently, the overall result therefore being that appellant's minimum term is three and one-half years and his maximum term is ten years.

The law concerning the discretion of sentencing judges is settled:

Where no statutorily mandated sentence exists, Pennsylvania trial judges are vested with broad discretion in sentencing. This Court will not reverse a judgment of sentence unless an abuse of discretion is shown. *Commonwealth v. Knight*, 479 Pa. 209, 387 A.2d 1297 (1978). Thus, in order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be manifestly excessive. *Commonwealth v. Wrona*, 442 Pa. 201, 206, 275 A.2d 78, 80–81 (1971). *Commonwealth v. Michenfelder*, 268 Pa.Super. 424, 427, 408 A.2d 860, 862 (1979).

It is equally settled, however, that "[t]he sentence must be imposed for the minimum amount of confinement that is

consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." *Commonwealth v. Martin*, 466 Pa. 118, 133, 351 A.2d 650, 658 (1976). *See also* 18 Pa.C.S.A. § 1321(b). Furthermore, the sentencing court must place on the record its reasons for imposing a particular sentence. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

Appellant does not—could not—argue that the sentence imposed on him exceeds the statutory limits. *See* 18 Pa.C. S.A. §§ 1103, 1104, 3502, 3903, and 3923. The issue we must decide, therefore, is whether the sentence is for some other reason "manifestly excessive." *Commonwealth v. Michenfelder, supra.*

Appellant admits that he violated his probation by absconding to California but points to the "model life" he led there—working, providing for his family, and being a productive member of society. He argues that his rehabilitative needs do not necessitate incarceration, that society does not need to be protected from him, and that in fact society would be better off if he were able to work and support his family. Appellant's brief at 7–8. These arguments have substance, as the lower court recognized, or else it would not have modified appellant's sentence.

In its statement of reasons for its original sentence, the lower court said:

> Of course, I am obliged in imposing sentence in any situation to consider the various alternatives such as no punishment, probationary periods, limited incarceration, and the like, but suffice it to say, the record will indicate that all of those situations have been tried and have proved in the past that despite the fact that he had a number of burglary charges and related offenses, that I imposed county time on Mr. Campolei because of his youth and because I thought there was a chance that he could straighten out, originally. I have tried drug programs on Mr. Campolei. I have at an earlier time when he was in violation of parole attempted not to impose too strict a measure of punishment on him.

But I believe now in light of all that has occurred, and the fact that he testified yesterday that he knowingly left this jurisdiction and went to California without having paid fines and costs, without having attempted any restitution of the numerous burglary charges involved here, without notifying his probation officer, and with the thought that he was going to beat the Pennsylvania Justice system by going to California, he did not believe anyone would bother him, I am forced to the conclusion that only a period of incarceration is appropriate in this case. Dec. 6, 1979, N.T. at 6–7.

■ It is not our function to decide whether we agree with this statement in the sense that if we had been the sentencing court, we should have said the same thing and imposed the same sentence. We must rather decide whether the sentence is "manifestly excessive." In making this decision, we must evaluate three factors: whether the confinement imposed on appellant is consistent with the protection of the public, the gravity of appellant's offenses, and appellant's rehabilitative needs. *Commonwealth v. Martin, supra.*

■ It is conceivable, perhaps even likely, that a sentence enabling appellant to participate in a work release program would be consistent with the protection of the public and appellant's rehabilitative needs; it would have been helpful if the lower court had made a specific statement in this regard. *See Commonwealth v. Doyle,* 275 Pa.Super. 373, 418 A.2d 1336 (1979). However, as we understand the statement the lower court did make, it was of the opinion that appellant is not as rehabilitated, and therefore not as slight a threat to the public, as he claims. Thus the court emphasized appellant's flight as representing an attempt "to beat the Pennsylvania Justice system."

The evidence of appellant's "model life" in California was in large part either hearsay or from highly interested witnesses. The essence of rehabilitation is the willingness to accept responsibility for one's conduct, and while the lower court is not explicit on the point, implicit in its statement is

the opinion that appellant has not achieved such willingness but is still running away. Moreover, the factor of the gravity of appellant's offenses weighed against appellant.

As an appellate court, we must leave a great deal to the sentencing judge as someone who has seen the witnesses, including the defendant, and who therefore has a much better feel for the case than we can have. What makes this case difficult is the suspicion, or worry, that an extended prison term may have the result of undoing whatever rehabilitation appellant has achieved, with the result that when he is released, he will be a greater threat to society than he is now, without any restitution for his past offenses having been made meanwhile. However, the lower court must have had the same worry. Nothing in the record would justify a statement by us that the court's judgment of what represented a fair sentence was wrong—much less a statement that the court's judgment was so plainly wrong as to constitute an abuse of discretion.

Affirmed.

CAVANAUGH, J., concurs in the result.