449 A.2d 1381

**COMMONWEALTH of Pennsylvania**

v.

**Pedro Antonio ALICEA.**

Supreme Court of Pennsylvania.

Argued April 16, 1982.

Decided Sept. 13, 1982.

Flora L. Becker, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., David Da Costa, Asst. Dist. Attys., Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

In this direct appeal from judgment of sentence, appellant, Pedro Antonio Alicea, raises the issue of whether the trial court erred at sentencing by considering appellant's initial defense of an alibi, withdrawn prior to trial, as warranting an increased sentence.[1]

On the afternoon of April 4, 1978, appellant had an argument with the victim when the latter's bicycle was stolen. Shortly thereafter appellant purchased a .38 caliber revolver and proceeded to a neighborhood bar. He there encountered the victim who, upon seeing him at the door, exited the bar and walked up to appellant. Appellant shot the victim.[2] As a result of this single shot, the victim died approximately one month later.

Prior to trial appellant's counsel had filed a notice of alibi defense as required by Rule 305(C)(1)(a), Pa. R. Crim. P. The day before trial was to commence, however, he withdrew it.

At trial, appellant proceeded on a theory of self-defense. He testified that, at the time of their initial confrontation, the victim had threatened to kill both him and his family. He also testified that he knew the victim to be a violent person and that he purchased the gun out of fear the victim would make good his threats. At their second meeting, he said the victim approached him outside the bar and stated,

1. This issue was not presented to the lower court by petition to reconsider sentence or otherwise. Although such failure would, under some circumstances, constitute waiver, the Commonwealth has chosen not to assert the waiver issue. In this procedural posture we will not raise it on our own motion. Furthermore, an analysis in terms of waiver, would only lead to a consideration of ineffectiveness of previous counsel.

2. An eyewitness, who was able to identify appellant at trial, testified for the Commonwealth as to the events immediately preceding and following the shooting.

"You came so that I can kill you. I am going to kill you now." N.T. at 3.35. Thereupon, he testified, he shot the victim in self-defense.

The trial court, sitting as trier of fact, convicted appellant of possession of an instrument of crime[3] and of voluntary manslaughter.[4] He was sentenced to two and one half to five years imprisonment on the former, and four to ten years imprisonment on the latter. The sentences were to run concurrently. In imposing sentence the court stated:

> I am clearly stating that I did not know anything about the alibi defense, and, of course, the pre-sentence investigators when they recommended probation for you did not know about the two stories you told—I am not saying that I would have followed their recommendations completely, but I would have not given a sentence as long as I have given you.

> The sentence that I would have given you would have been—I am giving the total that you would have had to serve in jail—not more than two years in jail—excuse me, not less than two years in jail nor more than ten years in jail.

> In effect, what you have gotten is an extra two years in jail on your minimum because of the lie perpetrated upon the Court and because I feel that your continual lying convinces me that you are not on your way toward the good life.

N.T.S.H. at 44–45.

Without asserting that *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) is limited to federal sentencing practices and that *Commonwealth v. Thurmond,* 268 Pa. Super. Ct. 283, 407 A.2d 1357 (1979), is wrongly decided under Pennsylvania law, appellant distinguishes them and argues the court erred in considering the withdrawn alibi defense as evidence of perjury which would allow enhancement of sentence. We agree.

**3.** 18 Pa.C.S. § 907 (Purdon 1973).

**4.** 18 Pa.C.S. § 2503 (Purdon 1973).

In *Grayson* the Supreme Court addressed the issue of whether a court could enhance a sentence based, in part, upon its first-hand observation of a defendant's false testimony at trial. The defendant in *Grayson* had escaped from a federal prison camp. His account of the flight and the reasons for it was contradicted by rebuttal evidence and by cross-examination of the defendant himself on crucial aspects of the story. The defendant was convicted by a jury and thereafter sentenced. At sentencing the court stated:

> In my view a prison sentence is indicated, and the sentence that the Court is going to impose is to deter you, Mr. Grayson, and others who are similarly situated. Secondly, *it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so.*

*Id.* 438 U.S. at 44, 98 S.Ct. at 2612 (emphasis added in original).

On appeal the defendant argued that the sentence constituted punishment for the crime of perjury, a crime for which he had never been convicted, and therefore was violative of due process. He also argued that allowing a sentencing court to consider arguably perjured testimony of a defendant would chill the right to testify in one's own behalf.

The Supreme Court rejected both arguments. Instead, it concluded that, since sentencing judges had traditionally exercised wide discretion in terms of the type of evidence relied upon at sentencing, and since such an inquiry is grounded in the legitimate goal of evaluating a defendant's personality and the prospects for rehabilitation, it was proper for the court to determine defendant's testimony at trial was perjured and to consider that perjury as a factor at sentencing. In so concluding, the Court stated:

> Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the

stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society. *Id.* at 55, 98 S.Ct. at 2618.

Although this Court has neither considered nor measured the parameters of *Grayson,* the Superior Court, in *Commonwealth v. Thurmond, supra,* did examine and apply its tenets. Affirming the prerogative of a sentencing court to consider false testimony, the court in *Thurmond* stated:

[C]onsideration of false testimony is justified only if certain requisites, guaranteeing the probative value of this evidence, are satisfied .... First, the misstatements must be willful.... Unless the defendant has willfully offered false testimony, the fact that the testimony was untrue does not of itself show that the defendant is not likely to respond to efforts at rehabilitation. Second, the misstatement must be material, not of marginal importance .... Only material falsehoods sufficiently bear on a defendant's character to justify enhancing punishment. Third, the verdict of guilt must necessarily establish that the defendant lied, not merely that the jury did not believe his testimony.... This requirement ensures that a defendant can receive a stiffer penalty based on giving false testimony only when the finder of fact has determined, beyond a reasonable doubt, that the testimony was willfully false. Fourth, the verdict must be supported by sufficient credible evidence. If the jury's verdict is to form the basis for enhancement of sentence, that verdict must have a rational foundation in evidence of record .... Fifth, the trial court, if not acting as the trier of fact, must observe the testimony allegedly false.... The cold record of the testimony and the verdict affords a meager basis for the sentencing court to determine whether the defendant's testimony demonstrated a character not likely susceptible to rehabilitation. Finally, the court may

consider the defendant's lying only as one fact among many bearing on sentence.

*Id.* 268 Pa.Super. at 287–88, 407 A.2d at 1359–60 (citations and parentheticals omitted). Without digressing upon the merits of the Superior Court's analysis of *Grayson,* we do wish to delineate its requisites and to distinguish it from the present case.

The defendant in *Grayson,* unlike appellant, was deemed to have committed perjury *while testifying at trial.*[5] In arriving at its determination, the Court in *Grayson* emphasized the importance and impact of perjured testimony at trial with respect to the trial court's evaluation of a defendant's demeanor and rehabilitative prospects. Thus the Court held that neither due process nor fifth amendment rights would preclude a sentencing court from considering, as one factor, deliberate false testimony of material facts as reflective of a defendant's character for purposes of sentencing. This holding should not be extended to include a discarded notice of alibi defense. Therefore, although a sentencing court, where it has observed false testimony as to a material fact at trial, may consider the defendant's perjury as one factor in imposing an appropriate sentence, it may not so consider an abandoned, albeit fabricated, notice of alibi defense.

If this Court were to adopt the theory advanced by the Commonwealth, i.e. that the court could "consider defendant's *attempt* to deceive the court with perjured testimony as a valid reason for enhancing his sentence," Brief for

5. Although, at one point, this sentencing court did state, "I am not convinced up to this moment you ever told me the truth or anyone else the truth," N.T.S.H. at 44, a review of the record clearly establishes the fact that the court considered the alibi a fabrication. Indeed, counsel for appellant admitted as much in open court. Additionally, eyewitness testimony was corroborative of appellant's account of the events immediately surrounding the shooting. Thus, the record establishes that the sentencing court either deemed the alibi notice perjured or was unable to determine whether it or the trial testimony was false. In the latter case, the record does not "necessarily establish that the defendant lied" as explicitly required by *Thurmond* and implicitly required by *Grayson.*

Commonwealth at 6 (emphasis added),[6] a defendant, once having filed a fabricated alibi defense notice would perforce be compelled to pursue it. That is, a defendant could not abandon the fabrication without risking the possibility of an enhanced sentence. Such a result would not only be needlessly harsh but would also deter future defendants from testifying truthfully.[7]

In addition, as the Court in *Grayson* noted, "It is unprofessional conduct for a lawyer knowingly to offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses." ABA Project on Standards for Criminal Justice, The Defense Function § 7.5(a) (Approved Draft 1971). An extension of *Grayson* to the instant facts could place defense counsel in the untenable, unethical position of either assisting in the presentation of false testimony or risking sentencing sanctions for withdrawing an alibi notice.[8]

Finally, it should be noted that the Court in *Grayson* condoned the use of perjured trial testimony as but one factor in the imposition of an appropriate sentence. The record in the instant case, however, discloses that the lower court considered the fabricated alibi as the *only* factor warranting the lengthier incarceration. *See supra* at p. 1383.

6. In this respect, the record is unclear as to whether the appellant even knew of the notice's having been filed. At the sentencing hearing counsel, referring to appellant stated: "He didn't authorize me to present any documents, and I don't think he really understands alibi notice and or that there is a necessity for giving an alibi notice." N.T.S.H. at 19.

7. In this respect it should be noted that, although the lower court perceived the notice indicated a willingness to perpetrate a lie upon the court, it is equally possible to view the abandonment of the alibi as an effort to present the truth. This Court does not, in any respect, condone a premature disposition to lie, but we choose not to punish an effort to rectify the situation.

8. At the sentencing hearing, counsel admitted to confronting appellant with the flimsiness of his alibi account. At that point, just one day prior to trial, appellant broke down and confessed that he had, indeed, shot the victim. Counsel then withdrew the alibi defense and proceeded upon a theory of self-defense at trial.

Since the record clearly indicates what the sentence would have been absent error, we hereby amend the sentence of the lower court [9] and order appellant to be incarcerated for a period of not less than two nor more than ten years on the voluntary manslaughter conviction.[10]

NIX, J., concurs in result.

McDERMOTT, J., files a dissenting opinion in which LARSEN, J., joins.

McDERMOTT, Justice, dissenting.

I must dissent from the decision of the majority which creates a new class of lies which our trial courts must permit and imposes new limits on the traditionally broad discretion of the trial courts in sentencing.

There is more wrong with this decision than the gradations of deceit that it countenances and the specious arguments that it embraces. The majority's opinion reinforces a view embedded in recent decisions of this Court that the truth does not count if it hinders lying.

The majority strains to protect a liar from the consequences of his deceit as this Court did in *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1977), where an oath in Pennsylvania has two different meanings, as well as *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973) and *Commonwealth v. Roots,* 482 Pa. 33, 393 A.2d 364 (1978), and their teratogeny, where a truth-testing tool fashioned from the transcendental experience of mankind, i.e., the use of prior convictions to measure present credibility, was squan-

**9.** This is consistent with our power to amend sentence. *See* e.g. *Commonwealth v. Eberts,* 282 Pa.Super.Ct. 354, 422 A.2d 1154 (1980) (if correction of sentence required, reviewing court may remand for resentencing or amend the sentence directly). Although this Court is reluctant to interfere with the discretion normally afforded a sentencing court, the record clearly reflects what the sentence would have been absent error, thereby rendering remand unnecessary. In so doing we reject appellant's alternatively requested relief, a new trial. Under the circumstances, such relief is clearly inappropriate.

**10.** This sentence is to run concurrently with the sentence of two and one half to five years for possession of an instrument of crime.

dered in a tangle of rules that has allowed a warm comfortable refuge for seasoned liars to practice their arts from witness stands all over the Commonwealth. In the case at bar, the majority wiggles through several definitions of lying to grasp a gratuitous opportunity to excuse a defendant whose conduct would poison the very function of a court as a truth determining institution.

The issue in this case is simply whether a sentencing court may enhance a sentence when it catches a defendant in a flat out lie in the course of a criminal prosecution. After being charged with murder in the cold-blooded shooting of an unarmed man, appellant filed a Notice of Alibi Defense. He provided a list of witnesses who were prepared to testify in support of his alibi. Upon being confronted by his attorney with the weaknesses of his alibi claim, however, appellant withdrew it on the day before trial and proceeded in an equally spurious theory of self-defense. Because appellant's blatant fabrication did not occur *"while testifying at trial,"* the majority holds that his duplicity may not be considered by the trial court in sentencing. At 1384 (emphasis supplied).

In *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), which the majority distinguishes without approving, the Supreme Court of the United States held that it is the ancient duty of a sentencing court to consider the totality of a defendant's conduct and character in fashioning an appropriate sentence. The Supreme Court rejected the arguments adopted today by the majority that a sanction for lies would "deter" defendants from the truth and affirmed the propriety of enhancing a sentence for lying. *Grayson* involved the enhancement of a defendant's sentence in light of his trial testimony which the sentencing court believed to be false. The majority erroneously concludes that the *Grayson* situation provides a stronger case for the enhancement of a defendant's sentence than does the instant case. At 1384.

The majority's distinction is a patently false one. If anything, enhancement of the sentence is more appropriate

in this case than in *Grayson*. First, in the instant case, the finding that appellant attempted to deceive the court does not depend on a subjective assessment of his credibility. Appellant's willful deception is inescapably obvious from his contradictory assertions of alibi and self-defense. Secondly, and more importantly, appellant's assertion of a false alibi evidences a more pervasive and cynical plot than would false testimony alone. Not only did appellant cling to his perjurious alibi defense with every intention of presenting it until confronted by his attorney on the eve of trial, but he was willing to involve others in his scheme, jeopardizing their freedom by inducing them to commit perjury. This calculated attempt to subvert the vital truth-determining process is even more probative of appellant's character and need for rehabilitation than false testimony would be. Rather than abusing his discretion, the trial judge applied well-settled principles by considering appellant's mendacity in imposing sentence.

We have long stated that sentencing is a matter within the sound discretion of the trial court, whose judgment will not be disturbed absent a manifest abuse of that discretion. *Commonwealth v. Erdington,* 490 Pa. 251, 416 A.2d 455 (1980); *Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978). An abuse of discretion will not be found unless the sentence exceeds the statutory limit or is manifestly excessive. *Commonwealth v. Wrona,* 442 Pa. 201, 275 A.2d 78 (1971); *Commonwealth v. Campolei,* 284 Pa.Super. 291, 425 A.2d 818 (1981). Because the instant sentence of four to ten years for voluntary manslaughter is within the statutory limit, the issue is "whether the sentence is for some other reason 'manifestly excessive.' " *Commonwealth v. Campolei,* 284 Pa.Super. at 298, 425 A.2d at 822. In evaluating the excessiveness of a sentence we consider, "whether the confinement imposed on appellant is consistent with the protection of the public, the gravity of the appellant's offenses, and the appellant's rehabilitative needs." *Commonwealth v. Campolei,* 284 Pa.Super. 299, 425 A.2d at 822. *See Commonwealth v. Green,* 494 Pa. 406, 431 A.2d 918 (1981); *Common-*

*wealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). The *willingness* of an accused to offer perjured testimony is highly relevant to the sentencing inquiry. As the Supreme Court of the United States stated in *Grayson:*

> [W]e must conclude that the defendant's *readiness to lie under oath* —especially when, as here, the trial court finds the lie to be flagrant—may be deemed probative of his prospects for rehabilitation.

438 U.S. at 52, 98 S.Ct. at 2616 (emphasis supplied).

Instead of following these time-honored standards, however, the majority cuts out of whole cloth another allowable lie. The majority opinion goes farther than merely allowing another series of unsanctioned lies—it gives a surreptitious smile to their practice. So long as a defendant does not take the witness stand, he may practice any form of fabrication and never have it count in the consideration of his character. He may, as here, offer two totally inconsistent defenses, alibi and self-defense, solicit lies to fortify them and send the prosecution on a wild goose chase of investigation. He may then select the one he believes most plausible and the court cannot treat such conduct as a reflection on his character to be considered in sentencing.

The lie the sentencing court considered here was not merely an "attempted" or "premature" or "implicit" lie. *See* pp. 1384, 1384–1385 n. 7. It was an overt act of deceit, which precipitated a useless and unnecessary investigation by the Commonwealth. Appellant notified the trial court that he intended to assert an alibi. The Commonwealth investigated and, if the prosecution had not produced an eyewitness, the fabricated alibi might have succeeded.[1]

---

1.  Appellant's trial counsel stated at the sentencing hearing:
    The alibi did not fall apart. I could have presented it, and we had a shot at walking out of this courtroom with not guilty.

    \*　　\*　　\*　　\*　　\*　　\*

    No doubt about it . . . .
    N.T. Sentencing Hearing at 21. This assertion certainly indicates that appellant had convinced counsel of his alibi. To suggest, as does the majority, that appellant did not know the meaning of offering an alibi defense is a ridiculous indulgence. *See* p. 1384 n. 6.

On the day before the trial appellant suddenly dropped his alibi claim and switched to self-defense. Two more inconsistent theories there could hardly be. The contempt of truth inherent in such an inconsistency would defy the father of lies himself. To condone such conduct, as the majority does despite its disclaimer, or even to waste the energy in distinguishing this fabrication from a "testimonial lie" is almost sinister.

The majority justifies its decision in a passage of epistemic nihilism holding that the unsanctioned right to lie will actually aid the search for truth:

> If this Court were to adopt the theory advanced by the Commonwealth, . . . a defendant once having filed a fabricated alibi defense notice would perforce be compelled to pursue it. That is, a defendant could not abandon the fabrication without risking the possibility of an enhanced sentence. Such a result would not only be needlessly harsh but would also deter future defendants from testifying truthfully.

At 1384 (footnotes omitted).[2] In short, the majority holds, if one starts lying and it seems unprofitable, he will not be compelled to continue. He may adopt the truth or switch to a richer vein of lies. How we are to know when the lies end and the truth begins, or what combinations of both has been finally practiced, is presumably left to coin flipping.[3]

One may gather from today's decision that in our courts telling the truth first, last and always is only for the meek or unimaginative. Even the majority must realize that a possible enhanced sentence for playing fast and loose with a

---

**2.** It is no surprise that the majority cites no legal authority to support its position, but merely attempts to distinguish the instant case from *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), and *Commonwealth v. Thurmond*, 268 Pa.Super. 283, 407 A.2d 1357 (1979). This is simply because there is no authority for the majority's novel restraint of the sentencing court's discretion.

**3.** The majority notes that the sentencing court was unable ultimately to determine whether the alibi notice was false or whether the trial testimony was perjured or whether appellant had ever told the truth. At 1384 n. 5. *See also*, N.T. Sentencing Hearing at 44. Who *could* make the determination on these facts?

court of law might deter a fabrication at the beginning of a case so that one need not live with a lie. Moreover, the notion that the enhanced sentence is "needlessly harsh," while indisputably within the statutory limits,[4] abandons any pretense of crediting the sentencing court's discretion.

For this Court to fashion elaborate sanctuaries for blatant lies or to demand anything less than the truth, is not only to abandon our function, but also to invite more mendacity, fabrication, hoax, fraud and chicanery. To believe blindly that the path to ideal justice is paved with specious distinctions, such as the majority draws today, is to hope that water lillies will grow in a septic tank.[5]

LARSEN, J., joins in this dissenting opinion.

4. *See* 18 Pa.C.S.A. §§ 1103(2), 2503(c). Indeed, the trial court recognized that it could have imposed a stiffer sentence:

> [T]he sentence I did impose was based on a lot of thought and was not ... an angry response to the lies which I felt were perpetrated because had I so reacted, you would be assured that I would have given you the maximum on each bill which would have totaled not less than seven and one half nor more than fifteen years in jail.

N.T. Sentencing Hearing at 45.

5. Finally, the majority's result is particularly revolting in light of the success of appellant's scheme. This is a case in which this Court does, indeed, permit appellant to "get away with murder."

By waiting until the last minute to switch to a self-defense theory, appellant successfully deceived the prosecutor, who had been preparing to meet the alibi defense. N.T. Post Trial Motions 3/12/79 at 4-5. The prosecutor did not impeach appellant with his spurious alibi notice, which he was entitled to do either under Pa. R. Crim. P. 305 C (1)(g) or a prior inconsistent statement theory. *See Commonwealth v. Bey,* 294 Pa.Super. 229, 439 A.2d 1175 (1982) (defendant may be cross examined on discrepancies between his alibi notice and trial testimony).

Thus, appellant was able to testify with his credibility intact and create a reasonable doubt in the trial judge's mind as to his guilt of first degree murder. This doubt dissipated when the trial judge belatedly learned of appellant's alibi scheme. N.T. Post Trial Motions 3/12/79 at 8. Appellant cleverly weasled his way out of a first degree murder conviction, which carries a mandatory life sentence. 18 Pa. C.S.A. § 1102(a).

We should not now disturb the trial court's discretion to further reduce appellant's rather lenient sentence. As we stated very recently "... a concededly guilty defendant [should not be permitted] by virtue of his gamesmanship, to flaunt his guilt in the face of the judicial system, the Commonwealth, and the citizens of Pennsylva-

nia." *Commonwealth v. Brown,* 497 Pa. 7, 12–3, 438 A.2d 592, 595 (1981).