# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 21 MAP 2020 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court dated 7/3/19, reconsideration |
| | : | denied 9/11/19, at No. 1573 EDA 2018 |
| | : | reversing the PCRA order, vacating the |
| v. | : | judgment of sentence of the Delaware |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, dated 4/25/18 at No. |
| | : | CP-23-CR-0006238-2010 and |
| ANTHONY SHAW, | : | remanding for a new trial |
| | : | |
| Appellee | : | SUBMITTED:  September 17, 2020 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                                    **DECIDED:  March 25, 2021**

In light of the statutory, one-year limitation on the time during which a petition for relief from a judgment of sentence may be filed under the Post Conviction Relief Act, difficult issues have arisen regarding the extent to which a petitioner's rule-based right to effective counsel in post-conviction matters may be vindicated.  Presently, the Superior Court determined that certain redress may be afforded during post-conviction appeals, and the Commonwealth challenges this ruling.

## I.  Background

On November 30, 2009, apparently in the 7:00 p.m. to 7:20 p.m. timeframe, Appellee shot the victim, Alex Adebisi, at the victim's apartment in Darby Borough, which is near Philadelphia.  Subsequently, Appellee was tried jointly with a co-

perpetrator for attempted murder and other offenses. At the pretrial stage, Appellee's counsel filed a notice of alibi under Rule of Criminal Procedure 567(A). Under this rule, a defendant who intends to present an alibi defense at trial must file a notice containing:

> specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call in support of the claims.

Pa.R.Crim.P. 567(A)(2).

The notice submitted by Appellee's counsel identified two alibi witnesses, April Wynn and Devon Crowley. Further, the notice provided:

> The Defendant contends that all the time of the commission of the alleged crimes, he was with April Wynn, who resides at [a specific address in Philadelphia] and Devon [Crowley], who resides at [another specific address in Philadelphia].
>
>       *          *          *
>
> The substance of the testimony of April Wynn and Devon [Crowley] will be that *at the time of the commission of the alleged crimes, Defendant Anthony Shaw was with them* and they were in Philadelphia and not in Darby at 127 North Front Street at the time of the alleged assault upon [the victim].

Notice of Alibi Defense dated Apr. 29, 2011, in *Commonwealth v. Shaw*, No. 6238-10 (C.P. Delaware), at 1-2 (emphasis added).

At trial, however, only Ms. Wynn was called by the defense to testify concerning the alibi. She stated that Appellee arrived at her house on November 30 in the 5:30 p.m. to 6:00 p.m. timeframe. *See* N.T., Sept. 14, 2011, at 154. Further, she attested that the pair rode in an unlicensed cab to Willow Grove Mall in Philadelphia's northern suburbs, arriving around 7:00 p.m. -- *i.e.*, as the crimes on the west side of Philadelphia in Darby were unfolding -- returning to her home after 11:00 p.m. *See id.* at 154-55.

During her cross-examination of Ms. Wynn, the prosecutor referred to the notice of alibi to impeach the veracity of Appellee's alibi. Trial counsel objected, as follows:

> Your Honor, the Commonwealth apparently -- is attempting to impeach this witness with my alibi notice. It's not her statement. It's not -- and had the Commonwealth interviewed these people the -- *I think what the Commonwealth's trying to show is that these two people were together and that's not what we're saying at all*.

N.T., Sept. 14, 2011, at 170 (emphasis added).[1] The trial court overruled this objection.

The prosecutor then asked Ms. Wynn: "[W]ould it surprise you that this notice says that Anthony Shaw was with you and -- *and Devon* [Crowley] and that you all were in Philadelphia" at the time of the shooting. *Id.* at 175 (emphasis added). The witness replied that Ms. Crowley was not present with her and Appellee in the relevant time period. *See id.* at 175-76.

After the Commonwealth concluded the cross-examination, Appellee's counsel asked for a sidebar conference and moved for a mistrial, and the following interchange ensued:

> [COUNSEL]: Your Honor, I just want to put on the record that the -- what was just done was improper. The Court's ruling was an egregious error and it results in a mistrial -- and -- and [I am] moving for a mistrial to this extent, Judge. Under the rules -- I complied with the rules. I gave the alibi notice. Now, had the Commonwealth done their job and sen[t] investigators out to talk to both of these people, it would be clear that *they weren't all together at the same time*. I prepared that. She didn't prepare it, okay. And she's

---

[1] From this point forward -- and until he was confronted with the specific terms of the alibi notice at a post-conviction hearing -- trial counsel adhered to misunderstanding that the alibi notice did not reflect what it said, namely: "The substance of the testimony of April Wynn and Devon [Crowley] will be that at the time of the commission of the alleged crimes, Defendant Anthony Shaw was with them[.]" Notice of Alibi Defense dated Apr. 29, 2011, in *Commonwealth v. Shaw*, No. 6238-10 (C.P. Delaware), at 1-2.

not responsible for what it says, okay. Now, she gives her --
she was -- the reason her name is on there is so she could
offer her portion of the testimony. . . .

THE COURT: The testimony given by the witness would
appear to be a contradiction of the alibi witness [notice] that
you supplied; and to that extent the Commonwealth's
attorney was entitled to explore it.

*Id.* at 178-79 (emphasis added).

In his closing remarks, trial counsel discussed the notice of alibi extensively, taking responsibility for having drafted and submitted it and explaining that, because witnesses had made statements indicating that the perpetrators were in Darby during the afternoon on November 30, he had identified Ms. Crowley to attest to Appellee's whereabouts at that time. In this vein, counsel advised the jurors:

So one part of the day we had one witness. The latter part
we had a second witness, okay. And *what the alibi notice
doesn't say that we were altogether* [sic]. . . . [Ms. Wynn
has] just testified as to where [Appellee] was from 5:30 to
around 11:30, midnight, okay. If Ms. [Crowley] were called,
again, we didn't have to call Ms. [Crowley] because they
concentrated their portion of the case on the evening part of
what happened, the shooting itself. But had they got into the
other evidence and it was necessary, Ms. [Crowley] would
have been available.

*Id.* at 218-219 (emphasis added).

For the prosecutor's part, she succinctly highlighted to the jury that:

There was no Devon [Crowley] with [Appellee and Ms.
Wynn] at the time of the commission of the crime. And I
would suggest to you that [Appellee] was not at the Willow
Grove Mall or in some hack on his way to the Willow Grove
Mall. He was in [the victim's] apartment, holding a gun[.]

*Id.* at 252.

After Appellee was convicted and an unsuccessful direct appeal was concluded, *see Commonwealth v. Shaw*, 105 A.3d 794 (Pa. Super. 2014) (*per curiam*), *appeal denied*, 630 Pa. 736, 106 A.3d 726 (2015), he lodged a petition under the Post Conviction Relief Act. *See* 42 Pa.C.S. §§9541-9546 (the "PCRA"). In the proceedings before the post-conviction court, Appellee pursued a claim that his trial counsel was ineffective for failing to amend the alibi notice prior to trial to remove the reference to Ms. Crowley. Attorney Stephen Molineux served as post-conviction counsel at the original-jurisdiction stage.

During an evidentiary hearing limited to the alibi-related claim, trial counsel testified that he had been retained by Appellee's mother, Monique Shaw, who provided him with "a myriad of information" and assisted in coordinating with witnesses. N.T., April 5, 2018, at 30-31, 36 (depicting Mrs. Shaw as the "point person" in communicating with Ms. Wynn and Ms. Crowley). Counsel related that Appellee had said that he was with Ms. Crowley in the afternoon of November 30 from around 4:00 p.m. to 5:30 p.m. Consistent with his explanation to the jurors at trial, counsel explained that this was significant since Commonwealth witnesses placed the perpetrators in Darby during this time period. *See id.* at 32-33, 52, 55-56. Although counsel indicated that he met with Ms. Wynn several times prior to trial, he acknowledged that he had never met with Ms. Crowley. *See id.* at 35, 51. But, according to counsel, he always expected Ms. Crowley to testify, and again, was depending upon Monique Shaw to produce the witness. *See id.* at 37, 40-41, 52 ("I essentially relied on Mrs. Shaw -- okay."), 53 ("I mean she delivered April [Wynn] and I expected Mrs. [Crowley] to be produced.").

At some point, however, counsel remembered that "there may have been a conversation with Monique Shaw that Mrs. -- something to the effect that there may have been some issue concerning Mrs. Crowley -- her inability to get in touch with

her[.]" *Id.* at 38; *see also id.* at 41 ("[I]t's coming back to me -- that [Mrs. Shaw] couldn't get in touch with Devon [Crowley]"). Counsel maintained, however, that he had never been told in advance of trial that Ms. Crowley wouldn't appear or cooperate. *See id.* at 51-52. Had counsel known in advance that Ms. Crowley would not be available to testify, he said that he would have advised Appellee of the option to amend the alibi notice or leave it as is and "see what happened." *Id.* at 39.

On cross-examination, Attorney Molineux engaged in the following dialogue with trial counsel:

> Q  Now, . . you would agree that your Notice of Alibi . . . merely indicated that [Appellee] was with Devon [Crowley] and Ms. [Wynn]. Is that correct?
>
> A  Right. And somewhere in Philadelphia -- I mean it doesn't say that they were together at the same time, that he was with these women at the same time. It just says that he wasn't --
>
> Q  You would agree it says he was with them. Would that be accurate?
>
> A  He was with them. Right.
>
> Q  In Philadelphia at the time of the alleged commission of this crime?
>
> A  Let me just make sure. Yes. That -- *it says that they -- that [Appellee] was with them and they were in Philadelphia and not in Darby at that address at the time of the alleged assault.* Yes. That's what it says.

*Id.* at 49-50 (emphasis added). This is the first instance in which counsel seems to have apprehended the notice's clear import in depicting that Appellee, Ms. Wynn, and Ms. Crowley all were together at the time of the shooting.

Maintaining that there was no need to amend the alibi notice, trial counsel also reiterated that:

> I thought it was error to permit the alibi notice to be used by the Commonwealth to impeach the witness, April [Wynn], where she would have to explain what I wrote. . . . I didn't agree that I could impeach you or [Appellee] or anybody else unless it was their statement. You know, I can't impeach it with my statement. That was always my understanding. That's still my understanding.

*Id.* at 57.

Attorney Molineux also presented Mrs. Shaw as a witness at the PCRA hearing. She explained that both Ms. Wynn and Ms. Crowley simultaneously maintained romantic relationships with Appellee. *See id.* at 15. According to Mrs. Shaw, substantially in advance of trial, Ms. Crowley "was recanting what she was saying," and "[s]he was saying that she wasn't going to testify." *Id.*[2] Mrs. Shaw also indicated that she conveyed this information to trial counsel. *See id.*

The PCRA court denied relief on the post-conviction petition, and Appellee appealed. Upon the PCRA court's direction to file a statement of matters complained of on appeal under Rule of Appellate Procedure 1925, Attorney Molineux filed a statement raising several challenges. However, the statement omitted the claim that had been the sole predicate for the post-conviction evidentiary hearing, namely, the alibi-related attack on the stewardship of trial counsel.

This claim, nevertheless, was advanced in the appeal proceedings after a substitution of counsel, as a component of a layered ineffectiveness claim alleging ineffectiveness on the part of trial counsel (for failing to amend the alibi notice) and

---

[2] As the inquiries turned to an explanation for Ms. Crowley's change of heart, the Commonwealth lodged a hearsay objection, which was sustained. *See id.* at 16.

Attorney Molineux (for failing to preserve the alibi-related claim of ineffective assistance on the part of trial counsel).[3] The Superior Court credited this claim and reversed, vacated the judgment of sentence, and remanded the matter for a new trial. *See Commonwealth v. Shaw*, 214 A.3d 283 (Pa. Super. 2019).

In opposing relief, the Commonwealth had asserted both that this claim was waived and that it was barred by *Commonwealth v. Henkel*, 90 A.3d 16 (Pa. Super. 2014) (*en banc*), which held that "[c]laims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal." *Id.* at 20. Regarding waiver, the Superior Court observed that the appellate proceedings presented the first opportunity for Appellee to raise a claim that arose after the filing of the notice of appeal.[4] As to *Henkel*, since that case involved the performance of PCRA counsel at the original-jurisdiction stage and not of *appellate* post-conviction counsel, the intermediate court reasoned that its holding did not apply. *See Shaw*, 214 A.3d at 293. The panel then proceeded to apply the criteria governing claims of deficient attorney stewardship at both the original-jurisdiction and appellate levels. *See supra* note 1.[5]

---

[3] The technique for "layering" ineffectiveness claims -- which is necessary to overcome waiver in some contexts -- is discussed in *Commonwealth v. McGill*, 574 Pa. 574, 586-90, 832 A.2d 1014, 1021-23 (2003).

[4] *See Shaw*, 214 A.3d at 293 (explaining that Appellee "had no opportunity to raise that claim before the PCRA court, practically or theoretically, as the alleged ineffectiveness did not occur until after the PCRA court was deprived of jurisdiction to modify or otherwise rescind its order denying relief"); *id.* (elaborating that, when the Rule 1925(b) statement was filed, Attorney Molineux "was acting as appellate counsel, not PCRA counsel, even though he previously served as [Appellee's] PCRA counsel").

[5] To succeed on an ineffectiveness claim, a petitioner must establish that: the underlying legal claim has arguable merit; counsel had no reasonable basis for her action or inaction; and the petitioner suffered prejudice as a result. *See Commonwealth v. Pierce,* 515 Pa. 153, 158–60, 527 A.2d 973, 975–76 (1987).

With respect to trial counsel's performance, the Superior Court explained that the alibi notice counsel had submitted failed to reflect his own contemporaneous understanding of the circumstances. *See Shaw*, 214 A.3d at 294 ("The notice indicated that [Appellee] was with both Crowley and Wynn at the time of the offense, whereas trial counsel was told that [Appellee] was with Crowley first, and then with Wynn at a later time that day."). The intermediate court further criticized trial counsel for failing to interview Crowley and to amend the alibi notice "to reflect the actual nature of [Appellee's] alibi claim and that Crowley was not willing to provide an alibi." *Id.*

Additionally, the panel could discern no reasonable basis to justify trial counsel's inaction. Although counsel expressed a belief that an alibi witness could not be cross-examined with an alibi notice, the court referenced its own prior decisions which it read for the proposition that "it is *well-established* that an alibi notice can be used for impeachment purposes." *Id.* (citing *Commonwealth v. Thomas*, 394 Pa. Super. 316, 322, 575 A.2d 921, 923-24 (1990), and *Commonwealth v. Hill*, 378 Pa. Super. 562, 567, 549 A.2d 199, 202 (1988) (emphasis in original)). The panel also highlighted that, when an alibi notice is withdrawn prior to trial, it cannot be subsequently used as evidence of a defendant's untruthfulness. *See id.* at 295 (citing *Commonwealth v. Alicea*, 498 Pa. 575, 580, 449 A.2d 1381, 1384 (1982)).

In this portion of its analysis, the Superior Court expressed its disapproval of counsel's testimony that he had refrained from amending the alibi notice, since he had hoped that Ms. Crowley would appear at trial to testify on Appellee's behalf. In this regard, the court returned to its criticism of counsel's reliance on Appellee's mother as the sole interface with Ms. Crowley. *See Shaw*, 214 A.3d at 295. In any event, the court reiterated, counsel should have been aware from the outset that the content of the notice was inaccurate in indicating that Appellee was with Ms. Crowley and Ms. Wynn at

the same time. The court also restated its position that counsel's disbelief that the alibi notice could be used to impeach an alibi witness was contrary to law. *See id.*

In terms of prejudice, the Superior Court explained that the identities of the co-perpetrators of the crimes in issue were contested in the case. Further, the intermediate court observed: there was at least some evidence that the victim's identification of Appellee was not credible; there was no physical evidence corroborating the victim's identification testimony; and no other witnesses identified Appellee as a perpetrator. Thus, the court reasoned that, if believed by the jury, Ms. Wynn's testimony might have produced a reasonable doubt in a juror's mind. Indeed, the panel continued, the circumstances were particularly prejudicial given that the inaccuracies in the alibi notice were solely the fault of trial counsel. *See id.* at 296.

Turning to the tier of the ineffectiveness analysis centered on Attorney Molineux's stewardship, the court reasoned that the arguable merit prong was "established by the merit of the underlying ineffectiveness claim concerning trial counsel's alleged ineffectiveness." *Id.* at 293. As to the reasonable-basis aspect, the court opined, because Attorney Molineux litigated only the alibi-related claim during the PCRA hearing, it could ascertain no reasonable grounds to support a subsequent abandonment of that claim. Additionally, according to the panel, nothing occurred during the course of the post-conviction hearing demonstrating a reason to jettison the claim for any purpose, strategic or otherwise. *See id.* at 293-94.

Finally, the court found the prejudice to be obvious, in that the deficient stewardship caused the waiver of a meritorious claim. *See id.* at 294.

Appeal was allowed to consider several issues raised by the Commonwealth, including whether a claim of ineffective assistance of post-conviction counsel may be properly raised for the first time in the proceedings before an appellate court.

## II. Arguments and Analysis

### A. Waiver

Throughout its brief, the Commonwealth contends that Appellee waived any challenge to Attorney Molineux's stewardship by failing to raise such a claim in the Rule 1925 statement. The Commonwealth invokes Rule of Appellate Procedure 302(a), which prescribes that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal," and references a plethora of cases addressing preservation of claims and issues for judicial review. *See* Brief for Appellant at 20-21.

Consistent with the Superior Court's analysis, however, we find that the waiver doctrine does not pertain. Significantly, the claim of ineffective assistance on the part of Mr. Molineux first arose upon his filing of the Rule 1925 statement omitting the alibi-related claim. It would certainly be unreasonable to apply issue preservation requirements to penalize a post-conviction petitioner because his attorney didn't recognize and raise a claim of his own ineffectiveness contemporaneously with the lawyer's own misstep. Moreover, this Court has enforced a general rule prohibiting attorneys from challenging their own stewardship. *See, e.g.*, *Commonwealth v. Koehler*, 614 Pa. 159, 132-33, 36 A.3d 121, 132 (2012).

The Commonwealth makes a legitimate point that Rule 302(a) says that issues that are not raised in the lower court cannot be raised for the first time on appeal. But the rule and the supportive cases provided by the Commonwealth are explicitly tied to the issue-preservation concern, which cannot reasonably be applied here.

### B. Ineffective Assistance of PCRA Counsel at the Original-Jurisdiction Stage

Separate and apart from waiver, however, the Commonwealth invokes *Henkel*. The *Henkel* opinion, authored by Judge Bowes, presents a studied, in-depth review of

this Court's decisions establishing that, "claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal."[6]

The *Henkel* court observed that post-conviction petitioners have a rule-based right to effective assistance of counsel, extending throughout any appeal proceedings. *See Henkel*, 90 A.3d at 22 (citing, *inter alia*, Pa.R.Crim.P. 904(C), (F)(2), and *Commonwealth v. Jones*, 572 Pa. 343, 364, 815 A.2d 598, 611 (2002) (plurality)). The court proceeded to summarize this Court's divided opinions, over the years, delineating how that right is to be redressed. The position that claims of ineffective assistance of counsel may be raised in appeal proceedings reached a high point in the plurality decision in *Ligons*, 601 Pa. 103, 971 A.2d 1125, authored by Justice Baer and joined by this author (in relevant part) and Justice Todd. Justice Baer emphasized that permitting petitioners to advance these claims on appeal was the only way to enforce the right to effective PCRA counsel, given that future post-conviction proceedings would be barred by the PCRA's one-year time limitation. *See id.* at 128-29, 971 A.2d at 1139-40.

On the other hand, the *Henkel* court explained, various Justices took the position that PCRA court supervision serves as sufficient protection for petitioners' right to effective collateral counsel. *See, e.g., id.* at 161, 971 A.2d at 1159 (Castille, C.J., concurring). These Justice stressed the legislative concern for the finality of judgments. *See id.* at 174, 971 A.2d at 1167 ("[T]he notion that there must be some formalized, PCRA-like procedure for vindication of claims of PCRA counsel ineffectiveness, if taken

---

[6] *Henkel*, 90 A.3d at 20 (citing *Commonwealth v. Jette*, 611 Pa. 166, 186 n.14, 23 A.3d 1032, 1044 n.14 (2011); *Commonwealth v. Hill*, 609 Pa. 410, 432 n.17, 16 A.3d 484, 497 n.17 (2011); *Commonwealth v. Pitts*, 603 Pa. 1, 9 n.4, 981 A.2d 875, 880 n.4 (2009); *Commonwealth v. Colavita*, 606 Pa. 1, 32 n.12, 993 A.2d 874, 893 n.12 (2009); *Commonwealth v. Ligons*, 601 Pa. 103, 126-31, 971 A.2d 1125, 1138-41 (2009) (plurality); *Commonwealth v. Potter*, 619 Pa. 174, 174-75 58 A.3d 752, 752-53 (2012) (*per curiam*)).

to its logical conclusion, would require approval of an infinite series of collateral attacks.").

The *Henkel* opinion demonstrates that, ultimately, the latter position has prevailed in the ensuing decisions of this Court, which are referenced in footnote 6 herein and discussed at length in *Henkel*. *See Henkel*, 90 A.3d at 25-29. The current state of the law, then, is just as the *Henkel* court characterized it and the Commonwealth presently argues -- claims of ineffective assistance of original-jurisdiction post-conviction counsel cannot be raised for the first time on appeal.[7]

## C. Ineffective Assistance of Appellate, Post-conviction Counsel in Preparing a Rule 1925 Statement

We turn next to the Superior Court's position that *Henkel* does not extend to claims of ineffective assistance of *appellate* post-conviction counsel. It is the Commonwealth's position that the distinction between appellate and original-jurisdiction post-conviction counsel is one without a difference. In either event, the Commonwealth contends, concerns with maintaining the orderly development of claims through the original-jurisdiction process and honoring the legislative objective of promoting finality should predominate.

Appellee, for his part, stresses the fairness considerations. He argues that the right to effective assistance of counsel must be enforceable to be meaningful, and that he had no opportunity to challenge Attorney Molineux's performance before the PCRA

---

[7] Recently, appeal was separately allowed to address whether the present status quo on this point should be maintained. *See Commonwealth v. Bradley*, ___ Pa. ___, ___ A.3d ___, 2020 WL 7639150 (Dec. 23, 2020) (*per curiam*) (granting allocatur to consider: "Should the Court . . . accept the Superior Court's request to devise a mechanism for the enforcement of the enforceable right to effective counsel in a first PCRA proceeding, when the current mechanism is not adequate to the enforcement of that important right?").

court, since the asserted ineffectiveness occurred after that court was deprived of jurisdiction. Referencing *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012), Appellee also highlights that the federal courts have also drawn a distinction between original-jurisdiction and appellate counsel in addressing post-conviction matters. *See* Brief for Appellee at 15 (citing *Martinez*, 566 U.S. at 16, 132 S. Ct. at 1320). Appellee explains that, in *Martinez*, the Supreme Court of the United States held that ineffective assistance of counsel in collateral review proceedings may sometimes establish cause for the default of a claim of ineffective assistance of counsel, thus overcoming the procedural default doctrine and enabling review in the federal courts. *See Martinez*, 566 U.S. at 9, 132 S. Ct. at 1315. Appellee highlights that if he is denied review of his challenge to Attorney Molineux's stewardship by this Court, he will have no recourse in federal court on account of *Martinez*'s limitation.

Although it is inconsistent with the direction previously taken by a majority of the Court, we approve the Superior Court's approach permitting a claim of deficient stewardship on the part of appellate post-conviction counsel for failing to raise and preserve a claim that was pursued before the PCRA court to be raised on direct appeal. As Appellee argues, the present circumstances are factually distinguishable from the line of decisions pertaining to original-jurisdiction post-conviction counsel, so that the doctrine of *stare decisis* and its exceptions need not be considered. *See generally Oliver v. City of Pittsburgh*, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011) (explaining that the holding of a judicial decision is read against its facts) (citing *Commonwealth v. McCann*, 503 Pa. 190, 195, 469 A.2d 126, 128 (1983)). And we find it particularly appropriate for the claims to be addressed in state court, since although federal doctrine may compensate for the Court's decisions in this line, federal review does not extend to the circumstances at hand. *See id.* at 16, 132 S. Ct. at 1320 ("The holding in this case

does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*" (emphasis added)).

**D. The Need for Factual Development**

We agree with the Commonwealth, however, that the matter should have been remanded to the post-conviction court for Appellee to be afforded the opportunity to create an evidentiary record to meet his burden of demonstrating the ineffectiveness, particularly in terms of the reasonable-basis criterion. *See Commonwealth v. Koehler*, ___ Pa. ___, ___, 229 A.3d 915, 937 (2020) (explaining that the PCRA court is "the appropriate -- and, indeed, the only -- forum for the evidentiary and factual development"); *BouSamra v. Excela Health*, ___ Pa. ___, ___, 210 A.3d 967, 980 (2019) ("It is not an appellate court's function to engage in fact-finding."). Although in very clear cases, an absence of reasonable strategy may be evident based on an attorney's conduct alone, we do not view this as such a case.

We also find that the Superior Court should have provided the post-conviction court with the opportunity to assess prejudice in the first instance. Clearly, trial counsel made an initial misstep by filing an alibi notice identifying a witness who counsel knew was not present with Appellee at the time of the crimes in question. In this regard, the notice is specifically designed to address "the place or places where the defendant claims to have been *at the time of the alleged offense*." Pa.R.Crim.P. 567(A)(2) (emphasis added). To the degree that there would ever be any cause to include references to persons who were not with the defendant at the time of the crimes in question, the notice should clarify that the person is not a conventional alibi witness.

That said, the prosecutor did not belabor her reference to the notice, and trial counsel was permitted to offer his explanation that Ms. Crowley and Ms. Wynn were purporting to have been with Appellee at different times. Although certainly it is possible

that the jurors relied on the notice to discredit the defense, again, it is most appropriate for the PCRA court to pass, in the first instance, on whether there is a reasonable probability that the outcome of Appellee's trial would have been different had counsel correctly handled the alibi notice. *See, e.g.*, *Commonwealth v. Chmiel*, 612 Pa. 333, 362, 30 A.3d 1111, 1127-28 (2011).

**E. The Use of an Alibi Notice to Cross-Examine Defense Witnesses**

Finally, because the underlying circumstances involve the use of an alibi notice to cross-examine an alibi witness in a case in which the defendant did not testify on his own behalf, we take this opportunity to reinforce that our decision should in no way be read to endorse the Superior Court's approval of such practice. The Rules of Criminal Procedure authorize cross-examination of the defendant concerning an alibi notice when the defendant choses to testify. *See* Pa.R.Crim.P. 567(G). While we need not definitively resolve the matter here, one can read the rule, by implication, to withhold approval for cross-examination with an alibi notice when the defendant elects not to testify, which is the prevailing approach in many other jurisdictions. *See Simms v. State*, 4 A.3d 72, 87-88 (Md. Ct. Spec. App. 2010) (collecting cases). Indeed, a contrary practice raised concerns about impingement on a defendant's rights under the Fifth Amendment to the United States Constitution. *See id.* at 89.

The order of the Superior Court is vacated, and the matter is remanded to the PCRA court, via the intermediate court, for further proceedings consistent with this opinion.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion.