462 A.2d 1351

**Carol A. RUTH, Appellant,**

v.

**Charles C. RUTH.**

Superior Court of Pennsylvania.

Argued May 4, 1982.

Filed July 1, 1983.

---

Richard P. Nuffort, Lancaster, for appellant.

John W. Beyer, Lancaster, for appellee.

Before SPAETH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from an Order of the Court of Common Pleas of Lancaster County, dated September 30, 1981. The procedural history and facts relevant to the issues on appeal are as follows:

On July 9, 1980 the appellant, wife, instituted an action under the New Divorce Code, alleging that the marriage was irretrievably broken.[1] Subsequently, the appellee, husband, filed a consent to the entry of a divorce decree. On July 30, 1980 the wife filed additional claims for alimony, counsel fees, child support[2] and distribution of marital property under Section 401 of the Code.

A hearing was held before a Divorce Master on December 9, 1980 and the Master's Report was filed on March 13, 1981. The Master recommended, inter alia, that a consent divorce be granted, that alimony be awarded to the wife for a period of ten years, that the marital property be divided favorably to the wife, and that the wife's request for counsel fees be denied.

Exceptions to the Master's Report were filed by both parties and argued before the lower court. The divorce was granted since neither party objected and all of the necessary documents had been filed. However, the court modified the Master's recommendation by awarding to the wife the marital home, subject to a mortgage, as well as all

---

**1.** The New Divorce Code provides:
> It shall be lawful for the court to grant a divorce where a complaint has been filed alleging that the marriage is irretrievably broken and 90 days have elapsed from the date of filing of the complaint and an affidavit has been filed by each of the parties evidencing that each of the parties consents to the divorce.

The Act of April 2, 1980, P.L. 63, No. 26, § 201; 23 P.S. § 201(c).

**2.** At the time this appeal was filed, all children born of the marriage were emancipated adults, therefore, the issue of child support is moot.

furnishings and contents of the home determined to be marital property, one-half of the cash downpayment from investment properties, one-half of the income from investment properties, and one-half of the proceeds from the parties' 1979 income tax refund. The wife was also awarded alimony in the amount of $400.00 per month for a period of two years. The wife was denied counsel fees because, in the opinion of the lower court, she was provided with sufficient cash awards to pay her own counsel. The husband was awarded the property known as Deer Camp in Sullivan County, as well as one-half of the income from investment properties and one-half of the proceeds from the tax refund. The Master's other determinations concerning the parties' responsibility for respective bills and the disposition of personal property were affirmed by the lower court based upon the husband's superior present and anticipated future earning power. Thereafter, the wife filed this appeal.

■ Prior to the enactment of the New Pennsylvania Divorce Code,[3] the scope of appellate review concerning the award of alimony pendente lite, counsel fees and expenses was the "manifest abuse of discretion" test.[4] The New Divorce Code is silent on the matter of the scope of appellate court review. However, in the recent case of *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983), an en banc panel of this Court held that orders for alimony pendente lite, counsel fees and permanent alimony under the new Divorce Code should also be reviewed only for an abuse of discretion by the lower court. In deciding to adopt the abuse of discretion standard, the Court in *Remick* considered both the nature of the awards in question and

3. The Act of April 2, 1980, P.L. 63, No. 26, § 101; 23 P.S. §§ 101 *et seq.*

4. Under the prior Divorce Code concerning the collateral issues of alimony, counsel fees and expenses, this Court stated:
   "A trial court possesses a wide range of discretion in the fixing of the amount of an award, and an appellate court will not interfere except in cases of manifest abuse of discretion." (citations omitted) *Oswald v. Oswald*, 263 Pa.Super. 85, 87, 397 A.2d 7, 9 (1979); *see also: Jack v. Jack*, 253 Pa.Super. 538, 385 A.2d 469 (1978).

their treatment under the prior divorce law.[5]  In that case, this Court stated:

> While this Court is very much concerned with orders affecting the property rights of the parties to a marriage or the support of the children from that union, our concern in those, essentially monetary judgments is not as paramount as it is with the decisions ruling on the status of the marriage or custody of the children.  Under the new Divorce Code, orders for alimony pendente lite or counsel fees should continue to be reviewed on appeal under an abuse of discretion standard, inasmuch as the character of the remedy continues to remain unchanged. On the same reasoning, alimony orders under the Code should also be reviewed only for an abuse of discretion and not broadly, as is the actual decree in divorce.  This approach is in keeping with both the case history developed under the prior law and within the aims of the Divorce Code.  *Id.*, 310 Pa.Superior at 30, 456 A.2d at 166.

In determining the propriety of property distribution awarded under the New Divorce Code, we likewise use the abuse of discretion standard of review.  *See: Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983).  While an order distributing property is final and permanent and may very well have a decisive and lasting effect on the lives of the parties, it is essentially a monetary judgment of the type the Court in *Remick* decided should be reviewed for an abuse of discretion.

Under Section 102(a)(6), *Legislative Findings and Intent,* the Code states:

> The family is the basic unit in society and the protection and preservation of the family is of paramount public concern.  Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

.     .     .     .     .

5.  Act of May 2, 1929, P.L. 1237, § 1 *et seq.,* 23 P.S. § 1 *et seq.*

(6) Effectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of their property rights.

■ Under the abuse of discretion standard, we are not to usurp the trial court's duty as finder of fact. Moreover, we do not choose to follow presumptions in the hope of achieving the legislature's goal of "economic justice". At oral argument in this case, a suggestion was made by counsel for the parties that this Court adopt "guidelines" or establish "presumptions" to be applied in deciding issues involving property rights under the Code. In view of the legislative guidelines which are set out forthwith, we see no need for this Court to enumerate additional criteria. Rather, we will carefully scrutinize each of the guidelines in determining whether or not the lower court has abused its discretion. This will assure that our review of proceedings under the New Divorce Code be appropriately assiduous.

The wife's first contention on appeal is that the division of marital property made by the lower court is inequitable. Guidelines for the distribution of marital property are set out in Section 401(d) of the New Divorce Code which provides:

In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

The lower court found that the parties were married for almost 25 years and that neither was previously married. At the time of the hearing the wife was 43 years of age, in good health, had a high school education, and worked as a legal secretary for $140.00 per week. She also received $65.00 a week from the county for the care of a foster child and had no minor children living at home. The husband is a year older than the wife, is in good health, has a ninth grade education, and earns $33,000.00 per year as a salesman. During the marriage, the wife had always remained at home as a homemaker while the husband worked his way up from a laborer to a sales position.

■ In reviewing the record as found by the lower court, in light of the provisions of the New Divorce Code, we find that the distribution of marital property was indeed equitable, and therefore, the lower court did not abuse its discretion. The investment properties were the result of the joint efforts of the parties while they were married, and thus should be divided equally. Even though all of the children are emancipated, there would be less disruption in the family's life-style by awarding the house and all of the furniture to the wife. Likewise, it is appropriate that Deer Camp, with a net value of about $5600.00, be awarded to the husband since he would have a greater interest in this property than would the wife. Finally, due to the husband's greater earning capacity, he was properly given the

responsibility for paying the greater amount of indebtedness left outstanding during the marriage. Therefore, we find this first contention of the wife to be without merit.

■ The wife next contends that the award of alimony was unreasonable both in amount and duration. The wife was awarded alimony by the lower court in the amount of $400.00 per month for two years. In addition, the wife earns a weekly salary and receives $381.00 a month from investment property.

Section 501(a) of the New Divorce Code indicates:

The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

In this case, even though the wife is currently employed, the lower court found that she lacked sufficient property to provide for her reasonable needs, due to the decision that she be primarily responsible for mortgage payments in the amount of $762.00 per month on the marital residence. We agree with the trial court that an award of alimony is proper under the circumstances.

In determining the size of the alimony award, section 501(b) of the Code provides the following guidance:

In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) the relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

Initially we note the lower court found that over the 25 year period of the marriage, both parties had been unfaithful on more than one occasion. Considering the 14 factors listed in section 501(b), as well as the favorable distribution of marital property which the wife received, we find that the lower court did not abuse its discretion in ordering alimony in the amount of $400.00 per month for 2 years. This award is fair and reasonable and will provide the wife with an adequate period of time for financial and family adjustments required by the marriage dissolution. It will also enable the wife to accrue substantial equity in the marital home should she decide to sell it after 2 years. The

wife contends that the award made by the Master of $400.00 per month for 10 years would be reasonable under the facts of this case. However, such an award would be violative of the rehabilitative purpose of alimony, and so we reject this contention of the wife.

■ The wife further contends that the lower court should have awarded her reasonable counsel fees. Section 401(b) of the Code provides in pertinent part:

...The court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear just and reasonable.

In the distribution of marital property, the wife was provided with one-half of the cash downpayment from the parties' investment properties and one-half of the parties' 1979 income tax refund. These awards totalled almost $2000.00 in cash. The lower court found this to be a sufficient amount of funds from which the wife could pay her counsel fees of $1680.00. We find no abuse of discretion by the lower court in failing to award counsel fees to the wife. We also note that the wife will receive one-half of the income from the parties' investment properties which also could be used to pay her counsel fees. Accordingly, we reject this claim made by the wife.

For all of the above reasons, we affirm the Order of the Court below.

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I agree with the majority that *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983) (en banc), requires us to review the lower court's order by an abuse of discretion

standard, but in my opinion the majority offers no adequate definition of that standard, and as a result, misapplies it. In *Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A.2d 1194 (1982), the Supreme Court held that in asking whether an abuse of discretion has occurred, we are to proceed in two steps. First we look to see whether the lower court has made findings of fact, whether it has considered those facts in light of the factors enumerated in the Divorce Code, and whether it has stated of record the reasons for its order distributing the parties' marital property and awarding or denying permanent alimony. If the lower court has not satisfied these requirements, its order must be reversed and the case remanded. Only if the court has satisfied these requirements do we consider whether its order represents an abuse of discretion. Here the lower court failed to make certain critical findings of fact, and failed to consider those facts it did find in light of the factors enumerated in the Divorce Code. For this reason alone, its order should be reversed and the case remanded. But if one overlooks the court's failure to follow *Bacchetta*, still I think it clear that the lower court's order represents an abuse of discretion. I should therefore reverse and remand.

–1–

In *Remick v. Remick, supra,* we said:

While this Court is very much concerned with orders affecting the *property rights* of the parties to a marriage or the support of the children from that union, our concern in those, essentially *monetary judgments* is not as paramount as it is with the decisions ruling on the status of the marriage or custody of the children. Under the new Divorce Code, orders for alimony pendente lite or counsel fees should continue to be reviewed on appeal under an abuse of discretion standard, inasmuch as the character of the remedy continues to remain unchanged. On the same reasoning, *alimony orders under the Code should* also *be reviewed only for an abuse of discretion and not broadly,* as is the actual decree in divorce. This approach is in keeping with both the case history devel-

oped under the prior law and within the aims of the Divorce Code.

*Remick v. Remick, id.* 310 Pa.Super. at 30, 456 A.2d at 166 (emphasis added).

Here, the lower court's order directs, among other matters, that the marital home shall be awarded to the wife; that she should have "[p]rimary responsibility for payment of the mortgage" on the home; and that the husband shall pay her alimony of $400 a month for two years. The order is therefore precisely the sort of order that *Remick* says "should ... be reviewed only for an abuse of discretion and not broadly."

I share the majority's concern that our review of orders distributing marital property be appropriately careful. For it is quite true that such orders "may very well have a decisive and lasting effect on the lives of the parties." Maj.op. at 1353. Indeed, this is equally true of orders awarding—or declining to award, as the case may be—permanent alimony. However, adequately defined, and properly applied, the abuse of discretion standard may nevertheless effectively protect the parties' interests. My difference with the majority is that it offers no adequate definition of the abuse of discretion standard, and as a result, improperly applies it.

The Divorce Code provides that before the lower court may enter an order distributing marital property or awarding or denying alimony, it must consider certain enumerated "relevant factors." [1] The Code further provides that when

---

1. 23 Pa.C.S.A. § 401(d) provides:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

the court does enter its order, it must "set forth the reason or reasons" for its order.[2]  These provisions make plain the

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

23 Pa.C.S.A. § 501(b) provides:

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

2.  23 Pa.C.S.A. § 404 provides: "In an order made under this chapter for the distribution of property the court shall set forth the reason or reasons for the distribution ordered."  Similarly, § 501(d) provides: "In an order made under this section the court shall set forth the reason or reasons for its denial or award of alimony and the amount thereof."

Legislature's intention that the lower court's discretion, when it orders a distribution of property or awards or denies alimony, is not a general discretion but one that must be exercised within specifically defined boundaries.

It follows that our responsibility, as an appellate court, is to determine whether the lower court has exercised its discretion within the boundaries defined by the Legislature. In other words: When we ask whether the lower court has "abused its discretion," we are asking, not a single, general question, but several, specific questions: First, has the lower court made findings of fact, so that the record discloses which of the "relevant factors" enumerated in the Divorce Code are present, and which are not? Second, has the court considered the facts, as it has found them, in light of the relevant factors? And third, has the court "set forth the reason or reasons" for its order? If the court has *not* satisfied these requirements, its order must be reversed and the case remanded. It is only when the court *has* satisfied these requirements that we defer to the court's discretion.

In *Remick v. Remick, supra,* we *might* have held that even when the lower court has satisfied the three procedural requirements that have just been enumerated, we will exercise our independent judgment in deciding whether the court's order was fair. But *Remick* did *not* so hold, holding instead that "in keeping with both the case history developed under the prior law and within the aims of the Divorce Code," *id.,* an abuse of discretion standard should be applied. It may be granted that *Remick* did not say in so many words that an abuse of discretion standard should be applied *only after* it has been determined from the record that the lower court has satisfied the requirements of the Divorce Code. But this conclusion is implicit in *Remick,* and in any event, and more important, it is explicit in *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982).

In *Bacchetta* the issue was whether application of the Divorce Code to marital property acquired before the Code's effective date was an unconstitutional deprivation of property. The Supreme Court, by ROBERTS, J. (now C.J.),

NIX, FLAHERTY, and LARSEN, JJ., held that there was no unconstitutional deprivation. The Court noted that "[t]he Code mandates that marital property be distributed in such portions as the court deems just after considering all relevant factors,'" and that "such a court-ordered distribution 'must by its terms be "equitable'" (quoting an opinion by the New Jersey Supreme Court). *Id.*, 498 Pa. at 234–235, 445 A.2d at 1198. After quoting the relevant factors enumerated by the Legislature "[t]o aid the court in the exercise of its equitable discretion," *id.*, the Court said:

> A party claiming that the court should take into account one of the above factors *must of course establish the relevance of the factor* to the particular case. And in exercising its discretion, the court *is required to set forth the "reason or reasons for the distribution ordered."* 23 P.S. § 404. *This provision not only serves to enhance the rationality of decision making but also permits effective appellate review. Cf. Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) (court required to articulate reasons for sentence). Thus, equitable distribution of property acquired during the marriage occurs only upon divorce, *only in cases where it is justified, and only in amounts warranted by the facts.*
>
> *Id.* (emphasis added).

The Supreme Court's citation in this statement to *Commonwealth v. Riggins, supra,* is particularly to be noted. *Riggins* involved the Sentencing Code. Act of Dec. 30, 1974, P.L. 1052, No. 345, § 1, *as amended,* 42 Pa.C.S.A. § 9701 *et seq.* (Purdon's 1982). The Sentencing Code and the Divorce Code are alike in that they both require that the lower court, *before it may exercise its discretion,* either to impose criminal sentence, or to distribute marital property or award or deny alimony, must first, find what the facts are; next, in the light of the factors enumerated in the Code, consider what result those facts justify; and finally, state of record the reasons for its decision. *Riggins* held that if the court doesn't satisfy these requirements, its sentence will be vacated and the case remanded for re-sen-

tencing, but that if the court does satisfy them, *then* its sentence will be vacated only for abuse of discretion. We have on many occasions applied this technique of appellate review in criminal cases. *See, e.g., Commonwealth v. Rooney,* 296 Pa.Super. 288, 442 A.2d 773 (1982); *Commonwealth v. Aldinger,* 292 Pa.Super. 149, 436 A.2d 1196 (1981); *Commonwealth v. Weldon,* 287 Pa.Super. 533, 536, 430 A.2d 1180, 1181 (1981); *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 427 A.2d 1356 (1981); *Commonwealth v. Cappiello,* 284 Pa.Super. 476, 426 A.2d 146 (1981); *Commonwealth v. Campolei,* 284 Pa.Super. 291, 425 A.2d 818 (1981); *Commonwealth v. Kostka,* 276 Pa.Super. 494, 419 A.2d 566 (1980); *Commonwealth v. Doyle,* 275 Pa.Super. 373, 418 A.2d 1336 (1979); *Commonwealth v. Wicks,* 265 Pa.Super. 305, 401 A.2d 1223 (1979). With *Bacchetta* decided, we should now also apply it in divorce cases where we are asked to review an order distributing marital property or awarding or denying permanent alimony.

–2–

This case, in my opinion, should be a good illustration of how effectively the *Bacchetta* technique of appellate review may protect the parties' interests. For the lower court has failed to make certain critical findings of fact; it has failed to consider those facts it did find in light of the factors enumerated in the Divorce Code; and when one examines the lower court's reasons for its order in light of the facts, one must conclude that the order is inconsistent with the factors enumerated in the Divorce Code, and represents an abuse of discretion.

The lower court noted that "[t]he key question involves the distribution of the marital home." Slip op. at 5. The court further noted that "[t]he other key marital property subject to distribution was created by the parties' agreement for the sale of investment property during their marriage." *Id.* at 7 (footnote omitted). It will be convenient to consider these two items of marital property in reverse order. It will be unnecessary in the course of this consideration to refer to all of the matters covered by the

lower court's order, such as a "deer camp," various furnishings, an automobile and truck, unpaid bills, and so on, for the lower court is correct that the key items of property are the marital house and the proceeds of the sale of the investment property.

As a result of their sale of the investment property, the parties are entitled to receive a down-payment of $3,000, and $762 per month for twenty years. Slip op. at 8. The lower court ordered that "the parties should share equally in this income ... [and in] the cash down payment ...." *Id.* Accordingly, under the court's order the wife[3] is entitled to receive $1,500 cash and one half of $762, or $381, per month for twenty years.

The master found that the value of the marital home is $66,500. Master's Report at 12. He further found that the home is encumbered by a mortgage of $68,679, on which the payments are $760 per month. *Id.* at 6.

In its opinion, the lower court does not refer to the master's findings; it makes no finding of what is the value either of the marital home or of the wife's interest in the home; the court's only reference to these matters is to say that under its order, the wife "will be primarily responsible for mortgage payments of $762.00 a month on the marital residence." Slip op. at 9. The court concludes that the marital home should be distributed to the wife, and gives as its reasons that this "will cause the least disruption to the family's lifestyle" and will not represent "a windfall in that Plaintiff [the wife] will be primarily responsible for the mortgage payments on the home and Plaintiff's contribution to the marriage partnership as a homemaker and mother provides ample justification for the award." Slip op. at 7. All of this, of course, raises the question: If the wife is to be awarded the marital home, how is she to pay for it?

---

**3.** One should perhaps say, "the former wife," for the lower court also ordered the parties divorced, and that part of the order has not been challenged on appeal. However, it will be less cumbersome to refer simply to "the wife," who was plaintiff below and is appellant here, and "the husband," defendant below and appellee here.

The lower court recognized that if the wife was to be able to stay in the home awarded to her, she would require the means to pay for it:

Accordingly [the court said], the Court will direct that Defendant [the husband] provide alimony for Plaintiff in the amount of $400.00 a month for a period of two (2) years.

It is intended that this award provide Plaintiff with a two-year period for considering financial and family adjustments required by the marriage dissolution. The two-year period will also hopefully provide Plaintiff with the accrual of substantial equity in the house should she dispose of the house after the two years.

Slip op. at 9.

This reasoning will not withstand examination.

As mentioned, under the lower court's order the wife will receive $381 per month from the proceeds of the sale of the investment property. Plainly, she can't make the $760 monthly mortgage payments on the marital home from that. When one adds the $400 per month alimony payments ordered by the lower court, it is seen that she will receive $381 plus $400 or $781 per month from the husband. That will be just enough to pay the mortgage, but it allows nothing for maintenance, and *furthermore*, under the lower court's order, the wife will receive the $400 per month for only two years. After that, how is she to pay for the home?

The only answer the lower court makes to this question is to say that "hopefully" the two-year period will "provide [the wife] with the accrual of substantial equity in the home should she dispose of the home after the two years." But nothing warrants any such "hope[ ]." It is certain that the wife will not accrue any "substantial equity" by making two years of mortgage payments; although the record does not disclose the exact terms of the mortgage, one may be confident that most of the payments will be towards interest on the mortgage debt. Nor is there the least reason to suppose that something will happen during the next two

years that will enable the wife to add $400 a month to her earnings, so that when her alimony stops, she will be able to replace the loss of alimony income from her increased earnings. When the wife testified before the master, in December 1980, she was 43 years old. N.T. 10. She is therefore now at least 45. The parties were married for 23 years—they married in 1956—and they have three children, two daughters, both married, and a son, who was 17 and was living with the wife when the master filed his report. *Id.* at 3. The master found:

> Plaintiff basically stayed in the house and reared the children while defendant went out to support the family. Plaintiff has only begun to work as a secretary-reception-ist in the last year (N.T. 10). Although Plaintiff is a high school graduate (N.T. 59), considering her age her future prospects of employability at a higher salary level than she currently holds *are dim at best.* If she had the opportunity, she would like to improve her secretarial skills or get into paralegal work, as she currently works for a law firm (N.T. 59).

Master's report at 9 (emphasis added).

The wife's current salary level to which the master refers was $148 per week gross, $103 per week net. N.T. 34–35.

The lower court makes no reference to these findings by the master, nor does it make any findings of its own regarding the wife's employability and earning capacity. Nowhere does the court explain or make any findings that support any basis for its "hope[ ]" that in two years, after the wife's alimony stops, she will somehow be able to live in the marital home. One can only agree with the lower court's prediction that she may "dispose of the home after the two years." Slip op. at 9. The disposition will be effected by the bank foreclosing on the mortgage. We can't say what will be the wife's position then; the lower court made no findings regarding the value of the home or the amount of the wife's equity in the home. We can say that so far as income is concerned, the wife will be entitled to only the $381 per month from the proceeds of the sale of

the investment property, plus her earnings of about $600 per month as a secretary-receptionist, in other words, about $1,000 per month income, or $12,000 per year, before taxes.

One may now compare the wife's situation with the husband's. Under the lower court's order he too will receive $381 per month from the proceeds of the sale of the investment property, or $4,572 per year. He will also receive some $33,000 per year in salary, or a total annual income of some $37,500, before taxes. As the master found:

> [W]hile only educated to the ninth grade, [the defendant husband] rose to become a vice president of the Buck Iron works at a salary of $34,000 per year (N.T. 80), although he has since the separation taken a sales job with a Michigan based firm at $33,000 per year (N.T. 80). Defendant does have the future ability to increase his earning power pursuant to his company's profit sharing plan (N.T. 112), although he must expend some of his salary on expenses (N.T. 113).
>
> Master's report at 9.

Again, the lower court makes no reference to these findings by the master, nor does it make any findings of its own comparing the husband's economic situation and prospects with the wife's. However, so far as appears, the court's order leaves the husband financially some three times better off than the wife, and with better prospects.

It is clear to me—and I find no reason suggested by my colleagues to conclude otherwise—that we should reverse the lower court's order and remand for further proceedings consistent with *Bacchetta v. Bacchetta, supra.* In the first place, the lower court has not satisfied the procedural requirements that *Bacchetta* holds must be satisfied. The court has failed to make critical findings of fact, especially regarding the value of the marital home and the wife's and husband's comparative economic situations and prospects. The court has further failed to consider those facts it did

find in light of the factors enumerated in the Divorce Code. These failures alone require reversal. It is just as though the court in imposing sentence for crime had failed to make findings of fact regarding the defendant's individual characteristics, and in deciding upon its sentence, had failed to consider the factors enumerated in the Sentencing Code. In such a case we reverse and remand. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. High*, 304 Pa.Super. 174, 177, 450 A.2d 158, 159 (1982); *Commonwealth v. Haggerty*, 294 Pa.Super. 591, 440 A.2d 623 (1982); *Commonwealth v. Andrews*, 282 Pa.Super. 115, 422 A.2d 855 (1980). But if for the sake of discussion one overlooks these failures, still we should reverse and remand, for it is clear that the lower court's order represents an abuse of discretion.

A court may abuse its discretion because its factual statements are not supported by competent evidence. *See, e.g., Commonwealth v. Dixon,* 279 Pa.Super. 587, 421 A.2d 355 (1980) (support order reversed for abuse of discretion where not based on competent evidence). A court may also abuse its discretion because it has failed to take account of the legal principles by which it is to judge the facts, or has misapplied those principles. *See, e.g., Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983). Here, the lower court has abused its discretion in both of these ways.

The lower court abused its discretion because its factual statements are not supported by competent evidence. As I have already discussed, the *master* made certain critical findings of fact, and *his* findings are supported by competent evidence, but the lower court makes no reference to these findings. While the court expressed the hope that after two years the wife will have accrued a "substantial equity" in the marital home, no facts of record warrant that hope. To the contrary, so far as we can tell, the wife will not have been able to accrue any substantial equity, and will lose the home by foreclosure on the mortgage.

The lower court also abused its discretion because its order is inconsistent with almost every one of the "relevant factors" enumerated by the Legislature in defining the boundaries within which the lower court is to exercise its discretion. The legislature has directed that in distributing marital property, "the court shall ... consider" the length of the marriage (factor No. 1), the skills, employability, liabilities and needs of each of the parties (factor No. 3); the contribution by one party to the increased earning power of the other (factor No. 4); the opportunity of each party for future acquisition of assets or income (factor No. 5); the sources of income of both parties (factor No. 6); the contribution of a party as homemaker (factor No. 7); the value of the property set apart to each party (factor No. 8); the standard of living established by the parties during their marriage (factor No. 9); and the economic circumstances of each party at the time the distribution is ordered (factor No. 10). 23 Pa.C.S.A. § 401(d). If the lower court had given proper consideration to these factors, it could not have entered the order it did. For 23 years (factor No. 1), the wife as a homemaker (factor No. 7) has enabled the husband to advance in his career (factor No. 4), with the result that while she is now unskilled, with—as the master properly put it—"dim [prospects] at best" (factor No. 3), he has attained a position of relative prosperity (factors Nos. 6, 8, and 10) with good prospects (factor No. 5). Yet the lower court has entered an order that will in two years leave the husband with some three times greater income, and the wife unable even to approach the standard of living she enjoyed during the marriage (factor No. 9).[4]

The order of the lower court should be reversed and the case remanded for further proceedings consistent with this opinion.

---

**4.** It is instructive to compare the master's recommended distribution with the lower court's distribution; it is far more favorable to the wife. I haven't discussed it, for what is before us is not whether the master but whether the lower court has committed an abuse of discretion. I do note that the lower court at no point explains why it rejected the master's recommendations.