505 A.2d 290

**Michele Foussier LAUB, Appellant,**

**v.**

**Richard Michael LAUB, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1985.
Filed Feb. 21, 1986.

---

Gordon M. Mair, King of Prussia, for appellant.
Frederic M. Wentz, Norristown, for appellee.

Before CAVANAUGH, McEWEN and CERCONE, JJ.

CAVANAUGH, Judge:

In this case, the appellant, Michele Foussier Laub, filed a complaint in divorce under the Pennsylvania Divorce Code of 1980, 23 P.S. § 101 et seq., asserting claims for equitable distribution, alimony, support and counsel fee. The appellee, Richard M. Laub, filed an answer and new matter raising as a defense to plaintiff's economic claims the existence of two ante-nuptial agreements which were executed on the same day. A hearing was held, limited to the issue of the validity of the ante-nuptial agreements, before the master who filed a report and recommendation finding the ante-nuptial agreements to be valid. The appellant filed exceptions to the report and recommendations of the master.

A hearing on the exceptions was held before Scirica, J. who entered an adjudication and decree nisi finding that the agreements and releases therein, foreclosed all of the appellant's claims for alimony, support and equitable distribution of marital property and that the agreements were valid and binding upon the parties. The appellant filed exceptions to the adjudication and decree nisi which were dismissed by Lowe, P.J. An appeal has been taken to this court from the order of February 27, 1985 dismissing the exceptions to the adjudication and decree nisi.

Both agreements between the appellant and appellee were entered on June 9, 1969, after a full disclosure by the appellee of his assets to the appellant shortly before the parties were married. The pre-nuptial agreements were prepared by counsel for the appellee who suggested to the appellant that she have her own attorney. The appellant indicated that she did not want separate counsel. The attorney reviewed the entire agreements with the parties. The appellee is some twenty-two years older than the appellant and at the time of the marriage he was approximately fifty years of age and the appellant was twenty-eight. The marriage was the first for the appellant, but the second

marriage for the appellee who had three children by his prior marriage. One child was born as a result of the marriage between the appellant and the appellee.

The first agreement entered into between the parties provided in paragraph two:

Each party shall be completely independent of the other in regard to possession, control and enjoyment of any property owned by him or her at the time of their marriage or acquired thereafter during their marriage
. . .

Paragraph four of the first agreement provides:

Each party does hereby remise, release . . . to the other all of his or her . . . and other rights and interests that will be acquired by each of them, upon their marriage, under the laws of . . . Pennsylvania . . . or . . . any other jurisdiction . . . in and to any property now owned or hereafter acquired by the other of them.

Paragraph one of the second agreement provides that: Each party agrees that he or she will not assert any claims for support or alimony, of any nature against the other.

Finally, paragraph three of the first agreement provides in part:

. . . this agreement shall not in any way apply to property the parties may acquire as tenants by the entireties or as joint tenants with the right of survivorship.

■ The pivotal issue is whether the marital agreements preclude equitable distribution, alimony, support and counsel fees under the Divorce Code of 1980. The agreements were entered into prior to the effective date of the Divorce Code which provides in Section 103:

This act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto.

1980, April 2, P.L. 63, No. 26, § 103, effective in 90 days.

Not only does the Act itself provide that it shall not affect a marital agreement entered into before the effective

date of the Act, but the question was addressed in *Wolfe v. Wolfe*, 341 Pa.Super. 313, 318, 491 A.2d 281, 283 (1985) which held that a valid post-nuptial agreement entered into prior to the effective date of the Divorce Code bars a claim for equitable distribution under the Code. In *Wolfe*, the wife claimed that the post-nuptial agreement was not complete because she could not waive her right to equitable distribution since the right had not yet come into existence. We quoted from a New York decision in *Boss v. Boss*, 107 Misc.2d 984, 436 N.Y.S.2d 167 (1981) dealing with a New York statutory provision similar to 23 P.S. § 103 wherein the court stated:

> Part of the *quid pro quo* which one gives up when one enters into a comprehensive agreement such as this is, [sic] the possibility that the law may change in one's favor. A stable and sure arrangement in the present is preferred to the mere "possibility" of a better result in the future.

*Boss v. Boss*, 107 Misc.2d 984, 436 N.Y.S.2d 167 (1981).

The fact that the instant case involved a pre-marital agreement rather than a post-nuptial agreement is of no material consequence. In *Fox v. Fox*, 114 Montgomery County L.R. 145 (1984) the parties entered into an ante-nuptial agreement in which the parties waived rights to alimony pendente lite, counsel fees, costs and support. Both parties agreed that they could dispose of their own property and each waived statutory rights and common law rights in the property of the other. The court held that the agreement was valid and under Section 103 of the Divorce Code was not affected by the Divorce Code with respect to equitable distribution and alimony.

■ Our next point of inquiry is whether the parties intended that the agreement should apply only to property and rights in existence at the time the agreements were entered as the appellant contends, or whether they encompassed after acquired rights such as those acquired under the Divorce Code. In interpreting a written contract, the intention of the parties must prevail. *Robert F. Felte, Inc.*

*v. White*, 451 Pa. 137, 302 A.2d 347 (1973); *O'Farrell v. Steel City Piping Co.*, 266 Pa.Super. 219, 403 A.2d 1319 (1979); *Snaith v. Snaith*, 282 Pa.Super. 450, 422 A.2d 1379 (1980). It is apparent that each party to the agreement was giving up his or her rights in the property of the other, whether the rights existed at the time of the agreement or subsequently came into being. The parties expressly gave up their right "in and to any property *now owned or hereafter* acquired by the other of them." Further, each party gave up any "claims for support or alimony, of any nature against the other." The concept of equitable distribution of marital property was not part of the statutory law at the time the agreements were entered, and the parties did not refer to it. Nevertheless, by clear language, they gave up the right to any interest in the property of the other and this necessarily included an equitable distribution of the other's property. Ante-nuptial agreements are presumed to be valid. *McGannon v. McGannon*, 241 Pa.Super. 45, 359 A.2d 431 (1976). The party seeking to avoid or nullify or circumvent such agreement has the burden of proving the invalidity of the agreement by clear and convincing evidence. *Ratony Estate*, 443 Pa. 454, 277 A.2d 791 (1971).

 The appellant contends that the ante-nuptial agreements are without ambiguity and the release clauses do not refer to future property or alimony rights. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). In interpreting a contract, the intention of the parties must be ascertained from the complete writing and each and every part of it must be taken into consideration and given effect if reasonably possible. *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.*, 497 Pa. 102, 439 A.2d 621 (1981). The agreements, read as a whole, manifested an intent that neither party was to have an interest in any

property belonging to the other, whether the interest in the property, or the property itself, existed at the time of the agreement or was acquired at some time in the future. We would have to ignore the agreement of the parties to allow equitable distribution of the parties' property under the Divorce Code. Similarly, the parties gave up any and all rights to alimony and support.

The appellant also contends that the ante-nuptial agreements are inoperative as they have terminated. The first agreement provides in paragraph six:

6. This Agreement represents the entire understanding between the parties and is binding on their respective heirs, administrators, and assigns, but shall automatically terminate in the event of the dissolution of the marriage by any means other than the death of either party.

▅▅▅ The entry of a divorce decree would dissolve the marriage. However, in this case a divorce decree has not been entered. The Divorce Code permits a bifurcated proceeding in some circumstances whereby the divorce decree is entered and ancillary matters such as equitable distribution of property are subsequently disposed of. *Pastuszek v. Pastuszek*, 346 Pa.Super. 416, 499 A.2d 1069 (1985). In the case before us, Judge Yohn by order of August 4, 1983 approved the master's report and directed a hearing on equitable distribution. This may not be construed as the entry of a divorce decree. Even when a divorce decree is entered, it is not final and remains pending until after the period for appeal expires. *Oswald v. Oswald,* 263 Pa.Super. 85, 397 A.2d 7 (1979).

▅▅▅ The appellant's contention that the ante-nuptial agreements must fall for lack of full disclosure by the appellee of his assets prior to entering the agreement is without merit. In order to overcome the presumed validity of a pre-nuptial agreement, the objecting party must establish its invalidity by clear and convincing evidence. In order for an inter vivos agreement to limit rights it must be established either that the intended spouse was not reason-

ably provided for or that there was not a full disclosure of net worth. *In re Harrison Estate*, 456 Pa. 356, 319 A.2d 5 (1974). Neither party contends that adequate provision was made for the appellant as under the agreement the only financial consideration she was to receive was to be named beneficiary under a $25,000.00 life insurance policy that the appellee owned. However, the agreement lists the appellee's assets and liabilities in detail. The appellee's financial statement listed securities, bank accounts and other financial interests that he owned and showed a net worth of approximately $272,000.00. The appellant's assets were listed as personalty having a value of $1,600.00 and real estate located in France of an unknown value.

The appellant argues that there was not full disclosure because appellee did not reveal that he had established three trusts for his children. There is no evidence that he had any interest in the trusts which were created in the nineteen fifties and there is no indication that the trusts were revocable. The value of the trusts does not appear of record, although the appellee recalled that none of the trusts ever had a value of more than $20,000.00. Appellee believed that one of the trusts for his children had already been distributed.

The appellant also contends that the financial statements did not disclose the appellee's income and that this constituted failure to make a full disclosure. This argument is without merit. The appellee fully disclosed his assets in his financial statement. The requirement is that of a full disclosure of one's financial worth at the time the agreement is entered. Income need not be separately listed. The reasonableness of a pre-marital agreement should be evaluated in the light of the circumstances existing when the agreement is entered, and consideration is to be given to the financial worth of the parties, age of the parties, number of children each has, and the intelligence of the parties. *Kester Estate*, 486 Pa. 349, 405 A.2d 1244 (1979). We are satisfied that there was adequate disclosure by the

appellee of his financial worth in this case and the ante-nuptial agreements are valid and enforceable.

Order affirmed.