369 Pa. Superior Ct. 504 (1988)
535 A.2d 664
Deborah (Santorella) NITKIEWICZ, Appellant,
v.
Joseph NITKIEWICZ.
Supreme Court of Pennsylvania.
Argued September 28, 1987.
Filed January 5, 1988.
*505 Sandra L. Kitman, Pittsburgh, for appellant.
Joseph F. Falatovich, Greensburg, for appellee.
Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, OLSZEWSKI, DEL SOLE, KELLY, POPOVICH and JOHNSON, JJ.
BROSKY, Judge:
This is an appeal from the Order of the trial court dismissing appellant's exceptions and declaring the Agreement entered into between the parties in this divorce action to be valid and binding.[1]
*506 Appellant presents the following questions for our review: (1) whether the trial court erred in finding that appellant signed the Marriage Settlement Agreement of her own free will; (2) whether the trial court erred in failing to consider or in discounting the evidence of physical violence and threats; (3) whether the trial court erred in failing to consider the unreasonableness of the Agreement in determining the question of duress; (4) whether the trial court erred in finding that the Agreement was not signed under duress because appellant chose not to retain independent counsel; (5) whether the trial court erred in finding that the Agreement was executed in the context of a full and fair disclosure; and (6) whether the trial court erred in failing to find the Agreement unconscionable and against public policy and, therefore, void and unenforceable.
Upon review of the record, the trial court opinion and briefs by counsel, we respectfully reverse the decision of the trial court.
The facts of the case are relatively uncomplicated. Appellee husband met with his attorney on March 2, 1983 to discuss his marital difficulties. The attorney was then directed to prepare a post-nuptial marriage settlement agreement for the parties, and on March 5, 1983, both appellant and appellee met with the attorney to review the agreement. The attorney advised appellant that he was representing appellee and that she (appellant) could take the agreement to an attorney of her choice for advisement. Appellant declined to do this. Appellee's attorney then proceeded to explain the agreement to the parties. Appellant, prior to executing the agreement, acknowledged that *507 she understood all of the provisions and that she was signing the agreement voluntarily.
Under the terms of the agreement, appellant was to convey her interest in the marital residence to appellee. Appellant was also to relinquish custody of the parties' minor children to appellee. In return, appellee was to pay the remaining indebtedness of a 1979 Volkswagen Rabbit and convey the title to appellant. Appellee was also to assume full payment on the couple's other bills. Under the terms of the agreement, appellant waived all of her rights concerning alimony. Both parties complied with the terms of the agreement.
On May 10, 1983, appellant filed for a divorce and alleged that the Marriage Settlement Agreement was voidable because she had entered into it under duress. Appellant claims that appellee threatened her with a gun a week or two before signing the agreement, thus placing her in fear of bodily harm.
Appellant also questions the agreement's validity by claiming that, because she was not represented by counsel, she failed to understand the provisions of the agreement. Additionally, appellant denies that a full disclosure was given of appellee's assets. We are now faced with deciding the validity of the Marriage Settlement Agreement.
Because we find appellant's fourth issue, regarding full and fair disclosure, to be meritorious, we will discuss only that aspect of the case, and need not address the remaining five issues raised on appeal.
In these types of cases, the trial court is the sole determiner of the fact of the record, Lowenschuss v. Lowenschuss, 327 Pa.Super. 120, 475 A.2d 127 (1984); Estep v. Estep, 326 Pa.Super. 404, 474 A.2d 302 (1984), and, absent an abuse of discretion, the Superior Court will not usurp the trial court's fact-finding function. Ruth v. Ruth, 316 Pa. Super. 282, 462 A.2d 1351 (1983). Thus, our scope of review is limited to determining whether the trial court abused its discretion in finding the Marriage Settlement Agreement to be valid and binding. Estep, supra.
*508 The validity of a postnuptial separation agreement depends upon the presence of one of two elements: (1) a reasonable provision for the claiming spouse; or (2) a full and fair disclosure of the other's worth. In re Estate of Geyer, 338 Pa.Super. 157, 487 A.2d 901 (1985). These factors must be considered in view of the circumstances on the date of the agreement, not in hindsight. In re Estate of Vallish, 431 Pa. 88, 244 A.2d 745 (1968); In re Kester's Estate, 486 Pa. 349, 405 A.2d 1244 (1979).
In discussing the burden of proof required in this type of case, the Supreme Court of Pennsylvania has stated that:

The person seeking to nullify or avoid or circumvent the Agreement has the burden of proving the invalidity of the Agreement by clear and convincing evidence that the . . . spouse at the time of the Agreement made neither (a) a reasonable provision for the intended spouse, nor (b) a full and fair disclosure of his (or her) worth. (Emphasis in original). (Citations omitted).
Estate of Friedman, 483 Pa. 614, 626, 398 A.2d 615, 621 (1978). In the case sub judice, the trial court admitted that, under the agreement, appellant did not fare as well as did appellee. Additionally, as stated in the recitation of facts, it is clear that appellant lost a great deal, including her home, her children and her right to alimony, and gained her car along with freedom from certain bills. Thus, we find the reasonableness of the agreement to be questionable, leaving us to determine whether a full and fair disclosure had been made.
In the instant case the opinion of the trial court states that there was nothing in the testimony or evidence to support an allegation that appellee failed to fully and fairly disclose his worth at the time the agreement was entered into. We must take exception to that statement. The record shows that appellee freely admitted that he never disclosed to appellant the amount of his earnings from a second source of income.
The testimony arose in response to direct examination:

*509 Q. Joe, are you employed?
A. Yes, sir.
Q. Who are you employed by?
A. Volkswagen of America.
Q. How long have you been employed there?
A. Right now about five and a half years.
Q. Do you have any other sources of income?
A. No, sir.
Q. Had you at any time prior to this had any other sources of income?
A. I would rather not answer that.
Q. I'm just asking if you had another source of income either yes or no.
A. Yes.
.....
and was expanded upon under cross-examination:
Q. Did you tell her how much of your other income was from the other sources?
A. No.
Q. How much did you make in '83 from the other source?
A. I don't know.
Q. You have no idea?
A. I sign the pay checks over to her every week, she pays the bills and deposits the money.
Q. I mean you said you answered Mr. Cassarino's question there's another source of income that you have. How much did you make from that?
A. I don't know.
Q. Approximately?
A. I can't even estimate, not that much.
Q. More than five thousand?
A. No.
Q. More than a thousand?
A. No.
Q. More than a hundred dollars?

*510 A. Probably.
Q. Probably. What is this other job that you have?
It was at this point that appellee asserted his Fifth Amendment right against self-incrimination. While we do not argue with appellee's constitutional rights, we cannot help but note that appellee's hesitancy to reveal not only the source, but the amount of his other income, leads us to conclude that there was some evidence of a failure to give full and fair disclosure of his assets.
While it is true that, in an analogous case, a panel of this court stated that income need not be separately listed, Laub v. Laub, 351 Pa.Super. 110, 505 A.2d 290 (1986), it did not abolish the need for a full and fair disclosure of assets. In Laub, appellant/wife claimed that because appellee/husband's financial statements, which listed assets indicating that husband had a net worth of approximately $272,000.00 at the time an antenuptial agreement[2] had been entered into, had not listed his income, there had been no full and fair disclosure. The panel rejected appellant's claim, stating that, "[t]he requirement is that of full disclosure of one's financial worth at the time the agreement is entered. Income need not be separately listed". Id., 351 Pa.Superior Ct. at 118, 505 A.2d at 294. The court there felt that adequate disclosure had been made. We narrowly interpret Laub to read that failure to list income separately in that case did not defeat the overall adequacy of the husband's disclosures. We do not broaden our interpretation to read that failure to divulge income does not invalidate a postnuptial agreement when assets are disclosed.
Further, this interpretation of Laub is consistent with the law as it has developed with regard to postnuptial agreements. In Commonwealth ex rel McClenen v. McClenen, 193 A. 83, 127 Pa.Super. 471 (1937), this Court held that a *511 Separation Agreement may be set aside where one party has been defrauded or deprived by the other of the information necessary to make a fair and just decision of the question of its reasonableness. In McClelland the wife executed a postnuptial agreement prepared by her husband's attorney at his office without being represented by counsel. The husband owned securities, land and other property with no stated value, and the parties together owned a home as tenants by the entireties. The agreement purported to waive the wife's right to spousal support. The Court held that the husband was under a duty to make a full and frank disclosure of his financial circumstances to the wife, including her interest in the parties' marital property, so that she was fully informed prior to executing the agreement.
Although, as stated earlier, it has been held that a full and fair disclosure does not require disclosure of the exact amount of property, Kaufmann's Estate, 171 A.2d 48, 404 Pa. 131 (1961), there must be a sufficient disclosure of assets to allow the other party to make an intelligent decision concerning the rights which will be given up under the terms of the agreement. In Kaufmann's Estate, supra, it is held that each party to an antenuptial/postnuptial agreement must act with the utmost good faith and candor with the other party to the agreement because of the confidential relationship which exists. Thus, we are still left to resolve whether, in light of the circumstances existing on the date of the agreement in the instant case, there was a full and fair disclosure of financial worth.
Although there was testimony to the effect that, appellant handled the finances of the couple during the time they lived together as husband and wife, we are of the position that appellee had a second source of income, the amount of which was unbeknownst to appellant. Thus, she could not have "managed" money of which she had no knowledge. Appellee testified that his income was $21,000.00 per year and that appellant was earning "a nickel or dime above minimum wage". Under these circumstances, it is quite *512 possible that appellee's second income could have had a substantial bearing upon the parties' property distribution.
Appellee's lack of disclosure renders invalid the postnuptial separation agreement. In re Estate of Geyer, supra. By ignoring this admission by appellee, that he never disclosed to appellant the amount of his earnings from a second source of income, we find that the trial court did abuse its discretion when it found the agreement to be valid.
Therefore, we respectfully reverse the decision of the trial court.
Order reversed. Jurisdiction relinquished.
POPOVICH, J., files a dissenting opinion in which DEL SOLE and KELLY, JJ., join.
POPOVICH, Judge, dissenting:
I cannot join in the Majority's determination to invalidate the post-nuptial agreement between the appellant/wife and appellee/husband on the ground that there was a failure on the part of the appellee to give a "full and fair" disclosure of his assets to the appellant prior to the execution of the agreement in question.
To begin with, the law is quite clear that disclosure of one's assets in regard to a pre- or post-nuptial agreement must be both "full and fair". Nonetheless, it is equally accepted in the law that disclosure of the "exact" value of the spouse's worth is unnecessary. See In re Holwig's Estate, 348 Pa. 71, 33 A.2d 915 (1943); In re Groff's Estate, 341 Pa. 105, 19 A.2d 107 (1941).
Moreover, I would offer that one is to be guided by the polestar looked to in any inquiry regarding the validity of any contractual agreement, i.e., whether the alleged misrepresentation was a "material" one which, had it been made known to the uninformed party, would have prompted such a party not to sign the agreement. See In re McClelland's Estate, 365 Pa. 401, 75 A.2d 595 (1950). A similar rule is *513 set forth in Restatement (Second) of the Law of Contracts, § 164 (1981), wherein it is written:
(1) If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.
Further, one of the three requirements that has to be met to trigger the invalidation of the contract is that the "misrepresentation must have induced the recipient to make the contract." Id at Comment a.
From the testimony recounted in the Majority Opinion, we learn that the appellee admitted not informing the appellant of a second source of income. However, upon closer scrutiny, we are apprised by the appellee that this supposedly nefarious activity, which prompted him to invoke his Fifth Amendment right to remain silent as to the source of the revenue, netted him probably more than a hundred dollars but less than one thousand dollars for the 1983 tax year  the year the agreement was signed.
Continuing, under the facts instantly, we have testimony of a ten-year marriage in which the appellee signed all of his checks over to the appellant to pay bills and deposit in the bank. Surely, the appellant, after all of this time, was aware of the value of the homestead she relinquished by the terms of the agreement to the appellee since she was to pay the family expenses and the mortgage with the monies received. This is buttressed by the trial court's finding that the appellant "handled all of the finances of the couple during the time that they lived together as husband and wife."
Thus, we have a situation in which the appellant gave up her share in a home valued between $38,000 and $47,000, she was relieved of the obligation to pay encumbrances amounting to $2,208.96, she relinquished her right to custody of the children and alimony, all in exchange for a Volkswagen and the opportunity to be free of debts as well *514 as acquiring her personal belongings and some furnishings from the marital home.
In light of the estate involved, which I find was fully and fairly disclosed by the appellee, I cannot agree with the Majority that the appellee's failure to disclose his income of approximately $100 to the appellant could be considered a material misrepresentation warranting a revocation of the Marriage Settlement Agreement. See Laub v. Laub, 351 Pa.Super. 110, 505 A.2d 290 (1986) (In assessing the enforceability of a marriage agreement, the requirement is that of a full disclosure of one's financial worth at the time the agreement is entered; income need not be separately listed).
There is no assertion by the appellant that had she been told of the appellee's surreptitious accumulation of some $100 in 1983 she would never have signed her name to the post-nuptial agreement. Consequently, one cannot say that the non-disclosure was a material misrepresentation rendering the agreement voidable. See In re McClellan's Estate, supra; Restatement (Second) of the Law of Contracts, supra.
Furthermore, the Majority cannot point to anywhere in the law where "full and fair" has been equated with "exact" in the disclosure of a husband's/wife's assets, in determining the validity of a pre- or post-nuptial agreement being assailed by a disenchanged husband/wife.
Therefore, it is difficult, if not impossible, to construe from the facts at bar a conclusion that (1) had the appellant been advised of the appellee's $100 second income source she would never have signed the agreement, or (2) that the misrepresentation of the appellee on such a point was material to the agreement so as to make it voidable at the election of the appellant.
Accordingly, finding that the Majority has strayed from the settled law in this case, I respectfully dissent.
DEL SOLE and KELLY, JJ., join.
NOTES
[1] The order in question does not appear to have terminated litigation because claims for equitable distribution and alimony remain undecided. While under Fried v. Fried, 509 Pa. 89, 501 A.2d 211 (1985), such orders determining interim claims would be considered interlocutory and unappealable, in the case sub judice, both parties would appear to agree that, if enforced, the settlement agreement is also dispositive of those claims yet to be decided. Thus, the trial court's order has the practical effect of putting appellant "out of court", in which case, we will allow the appeal to stand. See Fried, Id.; Pugar v. Greco, 483 Pa. 68, 394 A.2d 542 (1978); Ventura v. Skylark Motel, Inc., 431 Pa. 459, 246 A.2d 353 (1968); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 1528 (1949).
[2] The fact that Laub deals with an antenuptial agreement, whereas instantly, we are concerned with a postnuptial agreement, is of no consequence with regard to our decision. Principles applicable to antenuptial agreements, even though consideration and circumstances may sometimes differ slightly, are equally applicable to postnuptial agreements. In re Ratony's Estate, 443 Pa. 454, 277 A.2d 791 (1971).